IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   v.                 17-CR-218-LJV

SHANE AURAND,

      Defendant.

---

### GOVERNMENT'S SENTENCING MEMORANDUM

**THE UNITED STATES OF AMERICA**, by and through its attorney, James P. Kennedy, Jr., United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorney, Stephanie Lamarque, hereby files its Sentencing Memorandum with respect to the sentencing of defendant SHANE AURAND and in support of the Sentencing Guidelines calculations set forth in the Presentence Report, dated May 17, 2018. For the reasons set forth below, the government respectfully requests that the Court sentence the defendant to a term of imprisonment of 240 months, as well as a lifetime period of supervised release.

### BACKGROUND

On March 23, 2018, the defendant appeared before this Court and pleaded guilty to Count 2 of the Indictment, which charged a violation of Title 18, United States Code, Section 2252A(a)(2)(A) [distribution of child pornography]. The Presentence Report ("PSR") calculated a guidelines sentence of 240 months imprisonment. This memorandum is submitted in support of the government's contention that this Court should impose a sentence of imprisonment of 240 months.

## **STATEMENT OF FACTS**

The government concurs with and relies on the statement of facts outlined in the PSR at paragraphs 13 through 31.

## **DISCUSSION**

### I.     The Sentencing Procedure

Because the Guidelines and the sentencing range they produce in a case must be considered by the court, "a sentencing judge will normally have to determine the applicable Guidelines range," United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005), as "the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007). The framework in undertaking the Guidelines calculations is set forth in U.S.S.G. § 1B1.1, and in applying that framework, the judge is obligated to find all facts relevant to calculating the range, and make determinations as to the sentencing range that applies to the defendant. The standard of proof is preponderance of the evidence, see United States v. Garcia, 413 F.3d 201, 220 n.15 (2d Cir. 2005), even when the court is making determinations of fact, such as when the fact at issue is whether the defendant committed a crime other than the charged offense. See United States v. Martinez, 525 F.3d 211, 215 (2d Cir. 2008); United States v. Watts, 519 U.S. 148, 157 (1997) (per curiam) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."). The Guidelines range calculations are reviewed on appeal, so that "[a]n error in calculating the applicable Guidelines range is among the kinds of procedural error that renders a sentence unreasonable." United States v. Folkes, 622 F.3d 152, 156 (2d Cir. 2010); see also United States v. Fagans, 406 F.3d 138, 141 (2d Cir. 2005) (in many cases "an incorrect calculation

of the applicable Guidelines range will taint not only a Guidelines sentence, if one is imposed, but also a non-Guidelines sentence, which may have been explicitly selected with what was thought to be the applicable Guidelines range as a frame of reference.").

Title 18, United States Code, Section 3553(a) requires that a sentencing Court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." In determining the sentence, the Court must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be

3

       incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

      . . .

 (5) any pertinent policy statement—

   (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under Section 994(p) of Title 28); and

   (B) that, except as provided in Section 3742(g), is in effect on the date the defendant is sentenced.

 (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

 (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

  In executing these statutory responsibilities, the Court is obligated to: (1) identify the Guidelines range supported by the facts; (2) treat the Guidelines as advisory; and (3) consider the Guidelines together with the other factors outlined in 18 U.S.C. § 3553(a). <u>United States v. Ratoballi</u>, 452 F.3d 127, 131-32 (2d Cir. 2006). In order to "consider" the Sentencing Guidelines, as required by 18 U.S.C. § 3553(a)(4), the Court must determine the applicable Guidelines range in the same manner as before the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), which essentially rendered the Sentencing

Guidelines advisory.  See Crosby, 397 F.3d at 112.  The Second Circuit, however, has cautioned:

> that it would be a mistake to think that, after Booker, district judges may return to the sentencing regime that existed before 1987 and exercise unfettered discretion . . . On the contrary, the Supreme Court expects sentencing judges faithfully to discharge their statutory obligations to 'consider' the Guidelines and all of the other factors listed in section 3553(a).

Crosby, 397 F.3d at 113-114 ("it is important to bear in mind that Booker and Section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge."); cf., United States v. Sindima, 488 F.3d 81, 85-86 (2d Cir. 2007) (while a district court may impose a non-Guidelines sentence based upon Section 3553(a) factors already accounted for in the Guidelines range, it must explain why a Guidelines sentence did not sufficiently account for those factors.).  As long as the record reflects that the sentencing court was aware of the recommended Guidelines range and explained the decision to impose a different sentence, a "specific verbal formulation . . . demonstrat[ing] the adequate discharge of the duty to 'consider' matters relevant to sentencing," is not required.  United States v. Fleming, 397 F.3d 95, 100 (2d Cir. 2005); see also United States v. Fernandez, 443 F.3d 19, 30 (2d Cir. 2006).

A.     **SERIOUSNESS OF THE OFFENSE, PROMOTION OF RESPECT FOR THE LAW, AND PROVISION OF JUST PUNISHMENT**

Based on the nature of the defendant's crime and conduct, there is a compelling need to deter future similar conduct by him and other like-minded individuals who exploit children for their own sexual gratification. Sexual abuse and sexual exploitation of children are deplorable offenses that cannot be tolerated in our society. The defendant betrayed the

5

community's trust by committing a hands on offense against a sleeping child in his care and custody, recording himself removing her pants, underwear, and rubbing and probing her vagina with the tip of his finger while she was unable to fight the defendant or scream for help.  This victimization is now forever captured on the defendant's recording.  To further aggravate circumstances, he later distributed these images online.  The government has not been able to determine how many times the defendant distributed the images.  However, the chats between the undercover agent and the defendant suggest that this was not a one time occurrence and that the defendant has a fixation with receiving sexually explicit images of children produced by their parents: "Hey your daughter is real? It's hard to find real parents lol everyone keeps making fakes".  (PSR ¶14).  Further aggravating the defendant's conduct are his offers to abuse a one month old baby in exchange for images of child pornography.  (PSR ¶15-16).  Notably, the defendant also involved his girlfriend in the offense of conviction, asking her to assist him in obtaining child pornography—a crime for which she is now convicted.

The defendant was also found in possession of other horrific images of child sexual abuse.  As outlined in the PSR, several of the images involved in the case depicted children less than 7 years of age engaged in sexually explicit conduct. A review of the digital evidence indicates that many of the children depicted are between the ages of 4 and 7 years old.  For example, the defendant possessed a video of a nude child, approximately 7 years old, performing oral sex on an adult male.  During the video, the child can be heard saying "I don't want to do it" and "that's choking me."  (PSR ¶30).  It is beyond comprehension how any person could gain sexual gratification from the rape and torture of such young children.

The seriousness of the offense clearly weighs in favor of a significant custodial sentence as proscribed by the U.S. Sentencing Commission Guideline Manual for the purposes of punishment and promoting deterrence in similar child exploitation offenses. 18 U.S.C. § 3553(a)(1), (a)(4) and (b)(2) . As noted in the PSR, had the defendant pled guilty as charged in the Indictment, he would have been subject to a mandatory minimum sentence of 15 years imprisonment, and faced a guideline imprisonment range of 324-405 months. (PSR ¶62). The defendant has received the benefit of the plea agreement and a guidelines sentence of 240 months would adequately reflect the seriousness of the offense.

B.     **THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT AND THE NEED TO DETER FUTURE CRIMES AND TO PROTECT THE PUBLIC**

The defendant's history and characteristics also weigh in favor of a sentence of 240 months imprisonment. As already noted, the defendant took advantage of a sleeping child who was medicated and could not fight or call out for help. Apart from this case, the defendant has a history of targeting and sexually exploiting vulnerable girls. He was twice investigated as a teenager for soliciting child pornography from two students who were developmentally delayed. (PSR ¶86).

The defendant also failed a polygraph examination administered by Dr. Heffler as part of his evaluation. Especially concerning to the government is Dr. Heffler's conclusion that the defendant presents a high risk to sexually recidivate within a four year period, and that his static risk factors will remain unchanged for an extended period of time. (PSR ¶93). As noted by Dr. Heffler, his mental disorder:

> "would likely have a profound negative impact on any effort he may possess to lead a healthy, safe, and predictable existence . . . since these disorders

make it overwhelmingly difficult for him to experience a sense of social and interpersonal competence within the community, he is then at a significant risk of engaging in maladaptive means to meet these basic common life needs . . . it is not uncommon in such circumstances that the abused individual will sexually imprint at that developmental level and **subsequently become fixated or compulsively obsessed with sexual activity with children in that or similar age ranges**.

(PSR ¶92, emphasis added).

The history and characteristics of the defendant, as well as the need to protect the public from future crimes of the defendant weigh in favor of a significant sentence of incarceration as well as lifetime supervision. Furthermore, a substantial sentence of imprisonment would deter other would-be criminals from engaging in similar conduct.

## CONCLUSION

For all the reasons discussed above, the government recommends a sentence of 240 months imprisonment and a period of supervised release for life.

DATED: Buffalo, New York, September 18, 2018.

                                      JAMES P. KENNEDY, JR.
                                      United States Attorney

BY:   s/ STEPHANIE LAMARQUE
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        716/843-5894
        Stephanie.Lamarque@usdoj.gov