1       **UNITED STATES DISTRICT COURT**
        **WESTERN DISTRICT OF NEW YORK**
2


3  _____

   UNITED STATES OF AMERICA,
4                                       Case No. 1:17-CR-218
                    Plaintiff,                    (LJV)
5
   vs.                                  March 23, 2018
6
   SHANE AURAND,
7
                    Defendant.
8  _____


9

              **TRANSCRIPT OF CHANGE OF PLEA HEARING**
10      **BEFORE THE HONORABLE LAWRENCE J. VILARDO**
               **UNITED STATES DISTRICT JUDGE**
11

12 <u>APPEARANCES:</u>          JAMES P. KENNEDY, JR.
                             ACTING UNITED STATES ATTORNEY
13                           BY: STEPHANIE O. LAMARQUE, ESQ.
                             Assistant United States Attorney
14                           Federal Centre
                             138 Delaware Avenue
15                           Buffalo, New York 14202
                             For the Plaintiff
16
                             TRBOVICH LAW FIRM
17                           BY: MICHAEL SEIBERT, ESQ.
                             1967 Wehrle Drive
18                           Suite 1
                             Williamsville, New York 14221
19
   <u>DEPUTY CLERK:</u>          COLLEEN M. DEMMA
20
   <u>COURT REPORTER:</u>        ANN M. SAWYER, RPR, CRR, NYRCR, NYACR
21                              Notary Public
                             Robert H. Jackson Courthouse
22                           2 Niagara Square
                             Buffalo, New York 14202
23                           Ann_Sawyer@nywd.uscourts.gov

24

25

```
 1                    (Proceedings commenced at 9:58 a.m.)

 2              THE CLERK:   17-CR-218 United States of America versus

 3  Shane Aurand.

 4              Assistant United States Attorney Stephanie O.

 5  Lamarque appearing on behalf of the government.

 6              Attorney Michael Seibert appearing with defendant.

 7  Defendant is present.

 8              This is the date set for a change of plea hearing.

 9              THE COURT:   Good morning, everyone.

10              ALL PARTIES:   Good morning, Your Honor.

11              THE COURT:   Mr. Seibert, why don't you and your

12  client come up to the podium, please.

13              MR. SEIBERT:   Yes, Judge.

14              THE COURT:   Mr. Seibert, I understand that Mr. Aurand

15  would like to enter a plea of guilty pursuant to the agreement

16  that was presented and signed today; is that correct?

17              MR. SEIBERT:   Yes, Judge.

18              THE COURT:   Okay.  Are there any changes to the draft

19  agreement that was provided to my chambers on February 27th?

20              MS. LAMARQUE:   There are not, Your Honor.

21              THE COURT:   Okay.  The plea agreement will be

22  incorporated into and made a part of the proceeding.

23              Have you had a chance to sign it?

24              MS. LAMARQUE:   I did, and I handed it to Mr. Seibert

25  this morning.
```

Case 1:17-cr-00218-LJV-HKS   Document 46   Filed 08/10/20   Page 3 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

3

1          THE COURT:  Okay.  So why don't we get it signed now.

2          Mr. Seibert, do you need any more time to talk to

3    your client privately about this?

4          MR. SEIBERT:  I spoke with him on Wednesday, but if

5    he needs a little bit more time at this time, it's up to him.

6          THE DEFENDANT:  No, that's okay.

7          THE COURT:  And we're going to go through it in some

8    detail so that I get a comfort level that you understand

9    what's in it and that you're agreeing to what's in it.

10          THE DEFENDANT:  Okay.  Thank you.

11          MR. SEIBERT:  Judge, Mr. Aurand has executed the

12    document.

13          THE COURT:  Great.  Why don't you hand it to my

14    courtroom deputy, please.

15          MR. SEIBERT:  Thank you.

16          THE COURT:  Okay.  The plea agreement will be

17    incorporated into and made a part of this proceeding.

18          Mr. Aurand, before I accept your plea of guilty, I

19    want to be sure that you're fully informed of your rights,

20    that you understand those rights, that you understand the

21    nature of this proceeding, and that you understand the

22    consequences to you of pleading guilty.  So I'm going to tell

23    you about certain rights that you have, and I'm going to ask

24    you a series of questions.

25          If you don't understand something I say or a question

1    that I ask, let me know and I'll try to make it clear for you.

2           And if you want to talk to your lawyer for any reason

3    whatsoever during the course of this proceeding, let me know,

4    and we'll let you talk to him privately.  Okay?

5           THE DEFENDANT:  Okay.

6           THE COURT:  Ms. Demma, will you administer the oath,

7    please?

8

9    **S H A N E    A U R A N D**, having been duly called and sworn,

10   testified as follows:

11          THE COURT:  Mr. Aurand, you speak and understand

12   English?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand that you're now under

15   oath, and if you say anything that's not true, what you say

16   can later be used against you in another prosecution for

17   perjury or making a false statement?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you understand you have the right to

20   remain silent and not to answer my questions?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Would you speak into the microphone, so

23   that my court reporter can hear you?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Good.  Okay.  Do you want to answer my

1    questions and give up that right?

2           THE DEFENDANT:  Yes.

3           THE COURT:  And, counsel, you join in that?

4           MR. SEIBERT:  Yes, Your Honor.

5           THE COURT:  What is your full name, sir?

6           THE DEFENDANT:  Shane Michael Aurand.

7           THE COURT:  And where were you born?

8           THE DEFENDANT:  In Buffalo, New York.

9           THE COURT:  When?

10           THE DEFENDANT:  On February 24th, 1997?

11           THE COURT:  So how old are you?

12           THE DEFENDANT:  21.

13           THE COURT:  Are you married?

14           THE DEFENDANT:  No.

15           THE COURT:  Do you have any children?

16           THE DEFENDANT:  One.

17           THE COURT:  How old?

18           THE DEFENDANT:  She's one.

19           THE COURT:  And where does she live?

20           THE DEFENDANT:  She lives with my mom right now, and

21    her mom.

22           THE COURT:  Okay.  How many years of school have you

23    completed?

24           THE DEFENDANT:  11.

25           THE COURT:  Are you a United States citizen?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  And you say 11, that means you're

3   not a high school graduate?

4          THE DEFENDANT:  No.

5          THE COURT:  Do you have a GED?

6          THE DEFENDANT:  No.

7          THE COURT:  When were you last employed?

8          THE DEFENDANT:  When?

9          THE COURT:  Yeah.

10         THE DEFENDANT:  Whenever I got arrested.

11         THE COURT:  Okay.  And what were you doing?  What was

12  your job.

13         THE DEFENDANT:  I was working at a gas station.

14         THE COURT:  Okay.  Are you presently under the care

15  of a physician or a psychiatrist?

16         THE DEFENDANT:  Not that I know of, no.

17         THE COURT:  Okay.  Have you been treated for my

18  mental illness or addiction to narcotics of any kind?

19         THE DEFENDANT:  No.

20         THE COURT:  Do you suffer from any mental condition

21  or disability that would prevent you from fully understanding

22  the charges against you or the consequences of pleading

23  guilty?

24         THE DEFENDANT:  No.

25         THE COURT:  Are you currently under the influence of

1    any drug, any medication, or any alcoholic beverage of any

2    kind?

3              THE DEFENDANT:  No.

4              THE COURT:  Have you taken any medication or any

5    drugs at all within the last three days?

6              THE DEFENDANT:  No.

7              THE COURT:  Have you had any alcohol in the last 24

8    hours?

9              THE DEFENDANT:  No.

10             THE COURT:  Do you know of any reason we should not

11   proceed?

12             THE DEFENDANT:  No.

13             THE COURT:  Mr. Seibert, have you talked to your

14   client about these proceedings?

15             MR. SEIBERT:  Yes, I have, Your Honor.

16             THE COURT:  Do you have any reason to believe that he

17   should not proceed with this plea today?

18             MR. SEIBERT:  No, Your Honor.

19             THE COURT:  And do you believe he's in possession of

20   his faculties and competent to proceed?

21             MR. SEIBERT:  Yes, Your Honor.

22             THE COURT:  Mr. Aurand, have you spoken with your

23   attorney about the charges against you, about your rights,

24   about the proposed plea agreement, and about your options?

25             THE DEFENDANT:  Yes.

1          THE COURT:  Are you satisfied with the advice and

2  counsel that you've received from him?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Based on the statements of the defendant

5  and his attorney, and based on my own observations, I find

6  that the defendant is in possession of his faculties and is

7  competent to proceed.

8          Mr. Aurand, have you received a copy of the

9  indictment, that's the written statement of the charges

10 against you?

11         THE DEFENDANT:  Yes.

12         THE COURT:  In that indictment, the grand jury

13 charges, in Count 1, that you produced child pornography; in

14 Count 2, that you distributed child pornography; and in

15 Count 3, that you posed child pornography.

16         THE DEFENDANT:  Yes.

17         THE COURT:  Now you have a number of constitutional

18 rights that you'll be giving up if you plead guilty to any of

19 those counts, and I'd like to go over those rights with you

20 now.

21         You have the right to plead not guilty to any offense

22 charged against you, and to continue and persist in that plea

23 throughout the process.

24         In fact, you earlier entered a plea of not guilty,

25 and you have the right now to continue and persist in that

1  plea.

2       You have the right to a speedy trial and to a public

3  trial.

4       You have the right to a trial by a jury of your

5  peers, and you would have the right to participate in

6  selecting the members of that jury from members of the

7  community.

8       At trial, you would be presumed to be innocent, and

9  the government would have to prove your guilt by proving each

10 element of each count beyond a reasonable doubt.

11      The jury verdict would have to be unanimous to

12 convict you.

13      If both you and the government were to give up your

14 right to a jury trial, you would have the right to be tried by

15 the Court, by me.

16      You have the right to be represented by and to the

17 assistance of counsel for your defense.

18      You have the right -- I want to repeat that, because

19 you were distracted for a second.

20      You have the right to be represented by and to the

21 assistance of counsel for your defense.  You have that right

22 at trial, and at every other stage of the proceeding against

23 you including any appeal.  And you have that right regardless

24 of whether you enter into a plea agreement or you go to trial.

25      If you can't afford counsel, the Court will appoint

1   counsel for you free of charge to represent you at trial and

2   at every other stage of the proceeding.

3          You have the right to confront and cross-examine the

4   witnesses against you, that means the right to see and hear

5   the witnesses testify, and to have your lawyer ask them

6   questions.

7          You have the right to present a defense, and that

8   includes the right to testify on your own behalf, the right to

9   present evidence, the right to call witnesses to testify, and

10  the right to have witnesses subpoenaed and even compelled to

11  come to court to testify on your behalf.

12         At the same time, you also have the right to be

13  protected from compelled self-incrimination, that means the

14  right to remain silent and not to testify.

15         No one, including the government, can force you to

16  testify or to incriminate yourself in any way.

17         If you went to trial and you decided not to testify,

18  that fact could not be used against you.

19         If you went to trial and you decided not to present

20  any evidence, that fact could not be used against you.

21         If you plead guilty, you're giving up your right to

22  be protected from compelled self-incrimination, and you are

23  incriminating yourself.

24         If you go to trial, I would be the judge, and I would

25  be as fair and impartial as I could be.

USA v Shane Aurand - Change of Plea Hearing - 3/23/18

1             If you go to trial and you're convicted, you'd have

2    the right to appeal your conviction and to appeal your

3    sentence.

4             If you plead guilty, and if I accept your guilty

5    plea, you will waive each of these rights.

6             If you plead guilty, you're agreeing that this is

7    your day in court, there will be no trial, and you waive all

8    the rights that I've just listed and explained, as well as

9    your right to appeal, except for a very limited right to

10   appeal your sentence which we'll discuss later.

11            Has your attorney advised you of all the rights that

12   I just described?

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT:  Do you understand all of them?

15            THE DEFENDANT:  Yes.

16            THE COURT:  Do you have any questions about any of

17   them?

18            THE DEFENDANT:  No.  Not right now, no.

19            THE COURT:  Okay.  Now, there was a little exchange

20   there that I couldn't hear, and I wasn't meant to hear.

21            MR. SEIBERT:  Just -- I just said to him, now's the

22   time to speak up if you have a question.

23            THE COURT:  Okay.  Yeah.  If you have any questions

24   about any of those rights, now's the time to tell me.  Do you

25   have any questions about them?

Case 1:17-cr-00218-LJV-HKS  Document 46  Filed 08/10/20  Page 12 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

12

1          THE DEFENDANT:  No, not right now.

2          THE COURT:  Do you need any more time to talk to your

3     lawyer about them?

4          THE DEFENDANT:  I -- don't know.

5          THE COURT:  Well, do you understand all the rights

6     that I've just gone over?

7          THE DEFENDANT:  Yeah, yeah, yeah, I understand the

8     rights.

9          THE COURT:  Okay.  Do you understand that you're

10    going to be giving up those rights?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Okay.  And do you understand have any

13    questions about any of those rights?

14         THE DEFENDANT:  No.

15         THE COURT:  Do you want to talk to your lawyer about

16    any of those rights?

17         THE DEFENDANT:  No.

18         THE COURT:  Okay.  We're going to talk about the plea

19    agreement, too, and about the agreements in the plea

20    agreement, and you'll have a chance to discuss them with your

21    lawyer if you need to as we go through.  But right now, you

22    say you don't have any questions about your rights right now.

23    This is the time to tell me.

24         So -- so, don't tell me, I don't have any questions

25    right now.  This is the time I need to know.

1                    Do you have any questions about your rights?

2                    That's not to say that you can't come up with a

3     question later on.  But right now, I want to know, are you --

4     are you comfortable that you understand the rights that you'll

5     be giving up if you plead guilty?

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  Okay.  And do you need any more time to

8     talk to your lawyer about them right now?

9                    THE DEFENDANT:  No.

10                   THE COURT:  Okay.  So do you understand that if your

11    plea is accepted, you'll be incriminating yourself, and you'll

12    be giving up your right to a trial and all the other rights

13    that I just described?

14                   THE DEFENDANT:  Yes.

15                   THE COURT:  Do you still want to give up those

16    rights?

17                   THE DEFENDANT:  Yes.

18                   THE COURT:  Mr. Seibert, are you satisfied that

19    Mr. Aurand is waiving each of those rights knowingly,

20    voluntarily, and intelligently?

21                   MR. SEIBERT:  Yes, I do, Your Honor.

22                   THE COURT:  Do you join and concur in each of his

23    waivers?

24                   MR. SEIBERT:  Yes.

25                   THE COURT:  And were all formal plea offers by the

1    government conveyed to him?

2         MR. SEIBERT:  Yes.

3         THE COURT:  Let's now turn to the plea agreement.

4         Mr. Aurand, is this your signature on page 13 of the

5    agreement?

6         THE DEFENDANT:  Yes.

7         THE COURT:  Did you read and understand the agreement

8    before you signed it?

9         THE DEFENDANT:  Yes.

10        THE COURT:  Did you discuss it with your lawyer

11   before you signed it?

12        THE DEFENDANT:  Yes.

13        THE COURT:  Do you understand all the terms in the

14   agreement?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Do you agree with everything in the

17   agreement?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Okay.  Do you want more time to talk to

20   your lawyer about it?

21        THE DEFENDANT:  No.

22        THE COURT:  Do you understand that the Court is not a

23   party to the agreement, and is not bound by its terms?

24        THE DEFENDANT:  Yes.

25        MR. SEIBERT:  Judge, can we stop for one second so I

1    tell Mr. Aurand one thing?

2              THE COURT:  Sure.

3              (Off the record at 10:10 a.m.)

4              (Back on the record at 10:10 a.m.)

5              MR. SEIBERT:  You can go forward, Judge.

6              THE COURT:  Okay.

7              MR. SEIBERT:  I just wanted to reiterate something

8    that we spoke about on Wednesday.

9              THE COURT:  That's fine.  And, Mr. Seibert, you

10   haven't been here before, but you should know that I'm in no

11   hurry to get through this.

12             MR. SEIBERT:  I understand.

13             THE COURT:  My job today is to make sure that he

14   understands the rights he's been giving up, to make sure he

15   understands the plea proceeding, and to make sure he

16   understands the consequences to him.  And I take that

17   responsibility very seriously.  And as you'll see, I go

18   through it in, perhaps, more detail than some other judges do.

19             MR. SEIBERT:  Well, Judge I've been through this

20   plenty of times with Judge Arcara and --

21             THE COURT:  Okay.

22             MR. SEIBERT:  -- he's very thorough --

23             THE COURT:  Yeah, I know he is.

24             MR. SEIBERT:  -- and it takes a while.

25             THE COURT:  Yeah.  I know he is.  So I just want to

 1  make sure that you understand that any time you want to talk

 2  to him, any time you think you need to talk to him about

 3  something, you just let me know and we'll let you do that.

 4          And Mr. Aurand, the same thing goes for you.  Any

 5  time you want to talk to your lawyer, you let me know and

 6  you're not going to insult me or get me upset or anything like

 7  that.  That's -- that's what this proceeding is for, to make

 8  sure that you understand everything, and that you have time to

 9  talk to your lawyer to ask questions, or to ask me questions

10  if you have questions that you want to ask me.

11          So, let's go back to where we were.

12          Do you understand -- do you understand the Court is

13  not a party to the agreement, and is not bound by it?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Other than what's contained in the

16  written plea agreement, has anyone made any promises,

17  representations or guarantees of any kind to you in an effort

18  to get you to plead guilty?

19          THE DEFENDANT:  No.

20          THE COURT:  Other than what's in the written plea

21  agreement, and a general discussion of the sentencing

22  guidelines and other sentencing considerations with your

23  lawyer, has anyone promised you leniency, or a particular

24  sentence, or probation, or any other inducement of any kind to

25  get you to plead guilty?

Case 1:17-cr-00218-LJV-HKS  Document 46  Filed 08/10/20  Page 17 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

17

1           THE DEFENDANT:  No.

2           THE COURT:  Has anyone attempted in any way to

3    threaten you, threaten a family member, or threaten anyone

4    close to you to make you plead guilty?

5           THE DEFENDANT:  No.

6           THE COURT:  Is anyone forcing you to plead guilty?

7           THE DEFENDANT:  No.

8           THE COURT:  Whether you plead guilty is your

9    decision, is not your lawyer's decision.  You should do what

10   you want to the do, not what you think your lawyer wants you

11   to do, not what you think I want you to do, not what you think

12   anyone else wants you to do.  This is what you want to do.  Do

13   you want to plead guilty?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  And have you decided to plead guilty

16   voluntarily and of your own free will?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Let's look at the charges and the

19   penalties in the first several paragraphs of the plea

20   agreement.

21          You're agreeing to plead guilty to one of the charges

22   against you, that is Count 2 of the indictment.  And that

23   alleges that you violated Title 18, United States Code,

24   Section 2252(a)(a)(2)(A), and 2252(a)(b)(1), distribution of

25   child pornography, which is a felony.

1          The elements of that charge, that means what the

2    government would be required to prove beyond a reasonable

3    doubt if this case went to trial, are:

4          1.  That you knowingly distributed a visual

5    depiction;

6          2.  That the visual depiction had been shipped or

7    transported using any means or facility of interstate or

8    foreign commerce, or that had been shipped or transported in

9    or affecting interstate or foreign commerce by any means,

10   including by a computer;

11         3.  That the visual depiction contained child

12   pornography as that term is defined in 18, United States Code,

13   Section 2256(8); and

14         4.  That you knew that the visual depiction contained

15   child pornography.

16         Do you understand the nature of the charge?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Do you understand the elements of the

19   charge that I just described?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Do you have any questions about the

22   charge or about its elements?

23         THE DEFENDANT:  No.

24         THE COURT:  Have you discussed the charge and its

25   elements with your lawyer?

Case 1:17-cr-00218-LJV-HKS  Document 46  Filed 08/10/20  Page 19 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

19

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you believe if this case went to

3    trial, the government would be able to prove beyond a

4    reasonable doubt each of the essential elements of the crime

5    to which you'd like to plead guilty?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Have you been advised of the maximum

8    penalties and the mandatory minimum penalties?

9          THE DEFENDANT:  Yes.

10         THE COURT:  So if you turn back to page 1,

11   paragraph 1, you will see that the maximum possible sentence

12   is a term of imprisonment of 20 years, a fine of $250,000, a

13   term of supervised release up to life, and a mandatory $100

14   special assessment.  Do you understand the maximum penalties

15   that can be imposed?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Do you understand that there is a

18   mandatory minimum term of imprisonment of five years, and that

19   I must sentence you to at least that much time?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Ms. Lamarque, are there any additional

22   findings the Court will be asked to make, or any other factors

23   that might increase the statutory maximum or the mandatory

24   minimum?

25         MS. LAMARQUE:  There are not, Your Honor.

1            THE COURT:  And in addition to the five-year

2   mandatory minimum term of incarceration, there's also a

3   mandatory five-year term of supervised release; is that

4   correct?

5            MS. LAMARQUE:  That is correct.

6            THE COURT:  A mandatory minimum of five years.

7            MS. LAMARQUE:  That is correct.

8            THE COURT:  It can be up to life?

9            MS. LAMARQUE:  It can be up to life, Your Honor.

10            THE COURT:  Okay.  Do you understand that,

11   Mr. Aurand?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Okay.  So because supervised release of

14   at least five years is mandatory in your case, and because

15   incarceration is mandatory, as well, you'll be subject to

16   supervised release for at least five years after you're

17   released from prison; do you understand that?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  Do you understand what supervised release

20   is?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Have you discussed supervised release

23   with your lawyer?

24            THE DEFENDANT:  Yes.

25            THE COURT:  Do you understand that if you're

Case 1:17-cr-00218-LJV-HKS   Document 46   Filed 08/10/20   Page 21 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

21

1   sentenced to serve some time in prison, you're placed on

2   supervised release after you serve your time in prison, and

3   you violate one or more of the conditions of supervised

4   release, you can be returned to prison for all or part of the

5   term of supervised release, up to two years, without credit

6   for time previously served on supervised release?

7           THE DEFENDANT:  Yes.

8           THE COURT:  In addition, while you're on supervised

9   release, if you commit any criminal offense, under Title 18,

10  United States Code, Chapters 109(a), 110, or 117, or Title 18,

11  United States Code, Section 1201 or 1591 for which you may be

12  sentenced to more than one year in prison, and those are

13  crimes that involve child pornography or exploitation of

14  children.  So, if you're convicted of any of those crimes, and

15  you may be sentenced to more than one year in orison, then you

16  will be sentenced to serve a term of incarceration of at least

17  five years and up to life; do you understand that?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Do you understand that if any of those

20  things happen, if you commit one of those crimes that we just

21  talked about under the sections that involve child pornography

22  or exploitation of children, or if you violate any other

23  condition of supervised release, if that happens, then that

24  could result in your serving a total term of imprisonment

25  that's even greater than the statutory maximum; do you

1   understand that?

2           THE DEFENDANT:  Yes.  Yes, Your Honor.

3           THE COURT:  Now I don't know if you're presently on

4   parole, probation, or supervised release in some other case.

5   But if you are, this guilty plea alone can be the basis for

6   revoking parole, probation, or supervised release, and you can

7   be returned to prison on the other case; do you understand

8   that?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Do you understand that any federal

11  sentence that I impose in this Court cannot run concurrently

12  with any state sentence that's been imposed at the time of

13  your sentencing on the federal crime?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that parole has been

16  abolished, and if you're sent to prison, you will not be

17  released on parole?

18          THE DEFENDANT:  Yes.

19          THE COURT:  You're pleading guilty to a felony

20  offense.  If your plea is accepted, I will find you guilty,

21  and that may deprive you of some valuable civil rights, such

22  as the right to vote, the right to hold public office, the

23  right to serve on a jury, and the right to possess a firearm

24  of any kind; do you understand that?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Ms. Lamarque, there are issues of both

2    forfeiture and restitution, correct?

3          MS. LAMARQUE:  That's correct, Your Honor.

4          THE COURT:  Let's start with forfeiture.

5          Mr. Aurand, because forfeiture is an issue here, if

6    you plead guilty, the Court will require you to forfeit

7    certain property to the government, and I'd like now to look

8    at paragraph 3 and at paragraphs 28 to 34 of the plea

9    agreement.

10          And, Ms. Lamarque, will you please explain those

11    paragraphs for us?

12          MS. LAMARQUE:  Yes, Your Honor.

13          Paragraph 3 says that the defendant will admit the

14    forfeiture allegation in the information.  That does contain a

15    cell phone which was an instrumentality of the offense.  It's

16    an LG cell phone model LGL 62VL.  It has a serial number of

17    801A802D.

18          In the forfeiture paragraph starting at paragraph 28,

19    he is acknowledging that he's forfeiting that phone.  He's

20    agreeing to the abandonment of the phone, and all of the

21    related media.  And he's waiving any rights or interest in

22    those items.

23          He's agreeing and understanding that the United

24    States could destroy the phone, and knowingly and

25    intelligently waiving his rights to a jury trial on the

1    forfeiture of that phone, and waiving any constitutional,

2    legal, and equitable defenses to the forfeiture of the phone,

3    as well.

4           He agrees that the forfeiture is not an alteration of

5    his sentence, and it's not any kind of satisfaction of a fine

6    or restitution.

7           He further he agrees to waive any time restrictions

8    or any requirements under statute, or any notice provisions

9    about the forfeiture of the phone.

10          And he's waiving any right to appeal or attack the

11   matter in connection with the forfeiture of that cell phone.

12          THE COURT:  Okay.  Mr. Aurand, did you hear and

13   understand everything the prosecutor just said?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you agree with everything she just

16   said?

17          THE DEFENDANT:  Yes.

18          THE COURT:  So, do you understand you're giving up

19   your right to own or possess any of that -- that cell phone,

20   any of that electronic equipment, and any related equipment?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And you're giving up your right to notice

23   or to contest the forfeiture in court; do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  You're just walking away from that cell

Case 1:17-cr-00218-LJV-HKS   Document 46   Filed 08/10/20   Page 25 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

25

1   phone.  You'll have no right to it at all; do you understand

2   that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Okay.  And do you understand that the

5   value of that cell phone won't be put toward any fine or

6   restitution or anything else you have to pay; do you

7   understand that?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Okay.  Let's talk about restitution.

10             Paragraph 4 of the plea agreement addresses

11   restitution.

12             Do you understand, Mr. Aurand, that pursuant to

13   Title 18, United States Code, Section 2259, the Court must

14   order restitution for the full amount of compensable losses of

15   the victims as determined by the Court?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Okay.  Ms. Lamarque, can you explain that

18   to us?

19             MS. LAMARQUE:  Yes, Your Honor.

20             THE COURT:  And tell us whether there have been any

21   requests for restitution thus far.

22             MS. LAMARQUE:  There is one victim, Your Honor.  At

23   this time, we have not received any restitution requests.  But

24   if we do receive any restitution requests, the defendant is

25   agreeing that the Court will be required to impose restitution

1   based on any losses that the victim has suffered as a result

2   of the distribution of child pornography.

3           THE COURT:  Okay.  Have all victims entitled to

4   notice been given notice of this proceeding?

5           MS. LAMARQUE:  Yes, Your Honor.

6           THE COURT:  Okay.  So, Mr. Aurand, do you understand

7   and agree with everything that Ms. Lamarque just said?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Do you understand that the amount of

10  restitution is not limited to restitution related to the count

11  to which you're pleading guilty?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And that it could include losses that

14  arise from counts that are dismissed under the agreement, or

15  that never were charged, as well as relevant conduct in

16  connection with those counts; do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And do you understand that you will not

19  be entitled to withdraw your plea of guilty based on any

20  amount of restitution that I order?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And there are identifiable victims,

23  correct?

24          MS. LAMARQUE:  That's correct, Your Honor.

25          THE COURT:  Mr. Aurand, the Court may order you to

1    provide notice of this conviction to victims of the offense,

2    and to bear the cost of that notice; do you understand that?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Let's talk about the sex offender

5    registration condition.

6              Under the Sex Offender Registration and Notification

7    Act, you must register as a sex offender and keep your

8    registration current in a number of jurisdictions if you plead

9    guilty.  And those jurisdictions are:  Jurisdictions where you

10   reside, where you're employed, and where you are a student.

11   The requirements for registration include providing your name,

12   your residence address, and the names and addresses of any

13   places where you work or will work, or where you are or will

14   be a student, among other information.

15             The requirement to keep your registration current

16   includes informing at least one jurisdiction where you reside,

17   are employed, or are a student not later than three business

18   days after any change of your name, your residence, your

19   employment, or your student status; do you understand that?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Do you understand that the failure to

22   comply with any of these obligations will subject you to

23   prosecution for failing to register under federal law,

24   Title 18, United States Code, Section 2250, and that's

25   punishable by imprisonment, by a fine, or by both; do you

1    understand that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Do you understand that your guilty plea

4    or your possible conviction after trial may result in your

5    civil commitment under 18, United States Code, Section 4248,

6    as a sexually dangerous person; do you understand that?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Do you understand that that determination

9    as to whether you'll be subject to civil commitment initially

10   will be made by the Attorney General, or the director of the

11   Bureau of Prisons, at the conclusion of your term of

12   imprisonment, and that the Court will make the final

13   determination in a separate proceeding; do you understand

14   that?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  So do you understand the possible

17   consequences of your plea, including the maximum sentence that

18   you can receive, the mandatory minimum sentence, the

19   forfeiture, the restitution, the required registration as a

20   sex offender, the possibility of civil commitment, the

21   required supervised release, and everything else we've just

22   discussed?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Do you understand that the mandatory

25   minimum term of imprisonment is five years for Count 2, and

Case 1:17-cr-00218-LJV-HKS  Document 46  Filed 08/10/20  Page 29 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

29

 1   I'm required to sentence you to at least that much time?

 2         THE DEFENDANT:  Yes, Your Honor.

 3         THE COURT:  Do you understand that I'm also required

 4   to impose a special assessment of $100?

 5         THE DEFENDANT:  Yes, Your Honor.

 6         THE COURT:  And do you understand that unless you are

 7   indigent, I'm required to impose an additional special

 8   assessment of $5,000, pursuant to Title 18, United States

 9   Code, Section 3014?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Do you have any questions regarding the

12   possible sentence that you may receive if the Court accepts

13   your plea of guilty?

14         THE DEFENDANT:  No, Your Honor.

15         THE COURT:  Have you discussed the possible

16   punishment, the facts of your case, and any possible defenses

17   you might have with your lawyer?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Have you understood everything that's

20   been said so far?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Any reason we should not continue?

23         THE DEFENDANT:  No.

24         THE COURT:  Okay.  I want to you to listen carefully

25   now, because we're going to address the facts that the

Case 1:17-cr-00218-LJV-HKS   Document 46   Filed 08/10/20   Page 30 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

30

1   government would be prepared to prove at trial if this case

2   were to go to trial.

3          In paragraph 9, you and the government have agreed to

4   certain facts regarding the charge to which you'd like to

5   plead guilty.  I'm going to ask Ms. Lamarque to summarize or

6   read those facts for us, then I'm going ask you a couple

7   questions.

8          Then I'm going ask Ms. Lamarque how the government

9   would prove those facts if this case were to go to trial, and

10  then I'm going ask you a couple more questions.

11         So, Ms. Lamarque, can you please summarize or read

12  the facts that the government would be prepared to prove at

13  trial if this case were to go to trial?

14         MS. LAMARQUE:  Yes, Your Honor.

15         The defendant and the government are agreeing that on

16  or about December 31st, 2016, he produced -- the defendant

17  produced images of a child pornography of a 7-year-old victim

18  that he was babysitting.

19         On or about March 13th, 2017, the defendant knowingly

20  distributed the images of child pornography knowing that they

21  contained child pornography.  Specifically, he used the KIK

22  messaging app, K-I-K, messaging app on his LG cellular

23  telephone.

24         He distributed those images with the expectation that

25  he would receive child pornography in return.

Case 1:17-cr-00218-LJV-HKS  Document 46  Filed 08/10/20  Page 31 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

31

1          THE COURT:  Okay.  Mr. Aurand, do you hear and

2     understand everything Ms. Lamarque just said?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Is everything she said about you, and

5     your conduct, and your intent, true and correct?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Ms. Lamarque, how would the government

8     prove those facts if this case were to go true trial?

9          MS. LAMARQUE:  Your Honor, if we went to trial, the

10    government would call FBI agents who would detail their

11    investigation into the defendant after the defendant

12    distributed child pornography images over the internet to an

13    undercover FBI agent.

14          Specifically, the government would call that agent

15    who chatted with the defendant in his undercover capacity over

16    the KIK app.  He would authenticate those chats, and those

17    would come into evidence.

18          And he would detail how, in March 2017, the defendant

19    chatted with him and offered to send him child pornography of

20    his daughter if he could receive child pornography of a

21    9-year-old child in return.

22          Further, the defendant told him that his girlfriend

23    had been babysitting a 7-year-old girl, on -- and on

24    March 13th, 2017, the defendant sent the agent images of the

25    7-year-old girl, which included images of male fingers pulling

1  down the pants and underwear of a child exposing her vagina.

2       The government would introduce five images into

3  evidence, which would be authenticated by that agent.  Agents

4  from the Buffalo field office would testify that an emergency

5  disclosure request to KIK revolved back to the defendant.

6       And that on March 14th, 2017, agents interviewed the

7  defendant at his home in Gowanda, New York.  At that time, the

8  defendant admitted to taking video and pictures of the

9  7-year-old with his phone.  But he claimed not to know her

10  last name or her parents' name.  The defendant gave the agents

11  his cell phone, which had been hidden in a closet.

12       The government would call a forensic examiner who

13  would testify that he examined the LG cell phone, and the

14  images introduced into evidence, and he found those on the

15  phone.  And the metadata revealed they were taken on

16  December 31st, 2016.

17       The government would call the victim's mother.  She

18  would identify her daughter in the picture.  And she would

19  testify that on New Year's Eve 2016, she had left her

20  daughter, who was 7 years old at the time, in the care of the

21  defendant and his girlfriend.

22       Finally, the government would call the defendant's

23  girlfriend, who would testify that she had babysat the

24  7-year-old girl on New Year's Eve 2016, and she later learned

25  the defendant had produced images of the child while she was

Case 1:17-cr-00218-LJV-HKS   Document 46   Filed 08/10/20   Page 33 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

33

1  sleeping, and that the defendant was trading the images that

2  he had produced.

3          THE COURT:  Okay.  Mr. Aurand, do you understand --

4  did you hear and do you understand everything that

5  Ms. Lamarque just said?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you disagree with anything she just

8  said?

9          THE DEFENDANT:  No.

10          THE COURT:  Are you pleading guilty because you did

11  the things that the plea agreement says you did and that are

12  charged in the indictment?

13          THE DEFENDANT:  Yes.

14          THE COURT:  So did you knowingly distribute a visual

15  depiction?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And had that visual depiction been

18  shipped or transported using any means or facility of

19  interstate or foreign commerce, or been shipped or transported

20  in or affecting interstate or foreign commerce by any means,

21  including by a computer?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Did the visual depiction contain child

24  pornography, as that term is defined under federal law?

25          THE DEFENDANT:  Yes.

1        THE COURT:  And did you know that the visual

2  depiction contained child pornography?

3        THE DEFENDANT:  Yes.

4        THE COURT:  Is the government satisfied with the

5  factual basis?

6        MS. LAMARQUE:  It is, Your Honor.

7        THE COURT:  Let's talk about the sentencing

8  guidelines.

9        Section 3 of the plea agreement, paragraphs 10

10  through 20, deal with the sentencing guidelines.

11        Under the Sentencing Reform Act of 1984, the

12  Sentencing Commission issues guidelines that judges must

13  consult and take into account in determining the sentence in a

14  criminal case.

15        Mr. Aurand, if you plead guilty, or if you're

16  convicted after trial, the Court will calculate the applicable

17  sentencing guidelines range, consider that range, and then

18  consider other sections of the guidelines that concern what we

19  call departures, upward or downward from that range.

20        Although the Court must consider the guidelines, they

21  are merely advisory, and the Court is not bound to follow them

22  when determining your sentence.

23        Do you understand that?

24        THE DEFENDANT:  Yes.

25        THE COURT:  In determining your sentence, the Court

Case 1:17-cr-00218-LJV-HKS   Document 46   Filed 08/10/20   Page 35 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

35

1   will also consider the sentencing factors that are listed in

2   18, United States Code, Section 3553(a), and those factors

3   include: the nature and circumstances of the offense; your

4   history and your characteristics; the need for the sentence to

5   reflect the seriousness of the offense, to promote respect for

6   the law, and to provide a fair punishment to you; the need to

7   deter others from committing crimes and to protect the public

8   from your crimes; the need to provide you with educational or

9   vocational training, medical care, or other correctional

10  treatment; the kinds of sentences that are available; any

11  policy statements issued by the Sentencing Commission; and

12  sentences given to others who committed crimes similar to the

13  one to which you'd like to plead guilty, as well as the need

14  to provide restitution to victims.

15          Do you have any questions about any of those factors?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  I want to be sure that you generally

18  understand how sentencing and the guidelines would work.  Have

19  you and your lawyer talked about how the sentencing guidelines

20  might be applied in your case?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Has your lawyer explained how the various

23  elements and factors would be used to determine the guidelines

24  range for your sentence?

25          THE DEFENDANT:  Yes.

Case 1:17-cr-00218-LJV-HKS   Document 46   Filed 08/10/20   Page 36 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

36

1          THE COURT:  Do you understand that the conduct that

2    will be used to determine your guidelines range will include

3    not only conduct to which you plead guilty, but also relevant

4    conduct that may involve counts that are dismissed or that

5    never were charged; do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  So, for example, you're agreeing that the

8    offense involved a minor who had not attained the age of 12;

9    do you understand that?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And you're agreeing that the offense

12    involved sexual contact; do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand that you're agreeing

15    that the offense involved your knowingly engaging in

16    distribution?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And do you understand that you're

19    agreeing that the minor was in your custody and care at the

20    time of the offense?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand you're also agreeing

23    that the victim was vulnerable at the time the offense was

24    committed?

25          THE DEFENDANT:  Yes.

1          THE COURT:  And there may be other things that we're

2   not thinking about now that are relevant conduct and that may

3   be included in the computation of your sentencing guidelines;

4   do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Okay.  Let's look at paragraph 11.  You

7   and the government are agreeing in that paragraph that for the

8   purpose of sentencing, the guidelines range will be determined

9   as if you were convicted of one count of violating Title 18,

10  United States Code, Section 2251(a).  And I'm going to ask

11  Ms. Lamarque to please explain that for us.

12         MS. LAMARQUE:  We're agreeing that the guidelines are

13  going to apply, Your Honor, as was if the defendant was

14  convicted of production of child pornography as opposed to

15  distribution, which is the count that he's pleading guilty to.

16         THE COURT:  Okay.  So do you understand that you're

17  pleading guilty to distribution, but you're agreeing that the

18  guidelines computation will be that for production of child

19  pornography?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Okay.  If the Court accepts your guilty

22  plea, a presentence report will be prepared before your

23  sentencing.  Both you and the government will have an

24  opportunity to review that report, to challenge any reported

25  facts that you disagree with, to challenge the guidelines

Case 1:17-cr-00218-LJV-HKS   Document 46   Filed 08/10/20   Page 38 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

38

1    range calculation if you disagree with that, and to suggest

2    that the Court consider other factors that are consistent with

3    the plea agreement; do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Do you understand that neither the Court

6    nor your lawyer will be able to determine the guidelines range

7    for your case until after that presentence report has been

8    prepared?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And do you understand that the sentence

11   imposed may be different from any estimate that your lawyer or

12   anyone else may have given you?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you understand that neither the

15   uncertainty of your eventual sentence, nor any disappointment

16   you may have about the guidelines range, or about the

17   sentence, is going to be a basis to withdraw your guilty plea?

18             THE DEFENDANT:  Yes.

19             THE COURT:  In paragraphs 11 to 18 of the plea

20   agreement, you and the government are agreeing to guidelines

21   calculations.  And in paragraph 18, you're agreeing to an

22   understanding about a specific sentencing guidelines range.

23   Specifically, you and the government have agreed that taking

24   into account the maximum sentence that can be imposed, the

25   guidelines would call for a sentence of 240 months, 20 years,

Case 1:17-cr-00218-LJV-HKS  Document 46  Filed 08/10/20  Page 39 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

39

1  plus a fine of between $50,000 and $250,000, plus a period of

2  supervised release of five years to life, plus the special

3  assessments of $100 that I must impose, and if you're not

4  indigent an additional special assessment of $5,000; do you

5  understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that the Court can

8  accept that calculation, but that the Court can reject that

9  calculation and come up with a guidelines calculation of its

10 own?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And do you understand that regardless of

13 the calculation, even the Court's own calculation, the Court

14 has the discretion to impose a sentence that's more or less

15 severe than the guidelines range as long as the sentence is

16 not above the statutory maximum or below the mandatory

17 minimum?  In other words, Court can sentence you to the

18 maximum penalties that we discussed earlier?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And do you understand you're not going to

21 be able to withdraw your guilty plea based on the sentence

22 that I impose?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Do you understand that you and the

25 government are also agreeing not to advocate for or recommend

 1    the application of any other guideline, and not to move for

 2    any departure, or to recommend a sentence outside the

 3    guidelines, except as is set forth in the agreement?

 4              THE DEFENDANT:  Yes.

 5              THE COURT:  Let's look briefly at Section 4,

 6    paragraph 21.  That provides that if your plea is withdrawn or

 7    your conviction is vacated for any reason, the government has

 8    six months to reinstate any charges that are dismissed under

 9    the agreement regardless of the statute of limitations; do you

10    understand that?

11              THE DEFENDANT:  Yes, Your Honor.

12              THE COURT:  Ms. Lamarque, can you tell us about the

13    rights that the government reserves in paragraph 22, the

14    government's obligation in paragraph 23, and the defendant's

15    agreement in paragraph 24?

16              MS. LAMARQUE:  Yes, Your Honor.

17         By entering into this plea agreement, the defendant

18    is signalling that he understands that the government has

19    reserved its right to provide to the probation office all of

20    the information and evidence in its possession that the

21    government deems relevant concerning the defendant.

22         The government is reserving the right to respond at

23    sentencing to any statements made by the defendant that are

24    inconsistent with the information available to the government.

25              The government's reserving its right to advocate for

 1   a specific sentence in line with the terms of this agreement,

 2   and that includes both restitution, as well as a fine.

 3        The government also reserves its right to modify its

 4   position with respect to any sentencing recommendation or

 5   sentencing factor if it learns of evidence or information that

 6   was previously unknown.

 7        At sentencing, the government is agreeing to move to

 8   dismiss the open counts of the indictment.

 9        And the defendant is agreeing that any financial

10   records and information that he provides to the probation

11   office may be disclosed to the government for its use in the

12   collection of any unpaid fines.

13        THE COURT:  Mr. Aurand, do you understand and agree

14   with everything Ms. Lamarque just said?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  Let's look at Section 6, paragraphs 25

17   to 27.  And that deals with your right to appeal.

18        Do you understand that by entering into this plea

19   agreement, and entering a plea of guilty, you're giving up

20   your right to appeal or collaterally attack your conviction?

21        THE DEFENDANT:  Yes.

22        THE COURT:  Do you also understand that you're giving

23   up your right to appeal or collaterally attack all or part of

24   the Court's sentence, as long as the sentence is within or

25   less than the guidelines range noted in paragraph 18, that

Case 1:17-cr-00218-LJV-HKS  Document 46  Filed 08/10/20  Page 42 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

42

1  means a term of imprisonment of 240 months, 20 years, a fine

2  of up to $250,000, a period of supervised release of up to

3  life, and the required special assessment of $100, and if

4  you're not indigent, another special assessment of $5,000?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand that you're giving up

9  your right to challenge your sentence if it's within or less

10  than that guidelines range, even if in the future you learn

11  facts that you don't know now that you think would justify a

12  lesser sentence, and even if in the future the law changes in

13  a way that you think would justify a lesser sentence?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Did you discuss giving up your right to

16  appeal with your lawyer?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And based on that discussion --

19          MR. SEIBERT:  May I have one second talk to him?

20          THE COURT:  Absolutely.

21          (Off the record at 10:39 a.m.)

22          (Back on the record at 10:40 a.m.)

23          MR. SEIBERT:  He understands, Judge.

24          THE COURT:  Great.  So based on the discussion you

25  just had with your lawyer, the prior discussion you had with

1   your lawyer about your right to appeal, and having considered

2   the issue as I just explained it, do you agree to give up your

3   right to appeal on the terms and conditions that I just

4   stated?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Mr. Aurand, is the plea agreement that

7   we've been discussing the complete agreement between you and

8   the government?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Did you review the entire agreement with

11  your lawyer?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Do you understand and agree with

14  everything in it?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Has anyone made any promises,

17  representations, or guarantees to you, other than those in

18  this agreement?

19          THE DEFENDANT:  No.

20          THE COURT:  And do you understand and agree that this

21  agreement is the final one, and that it takes the place of any

22  other agreement that you had with the government, whether that

23  agreement was in writing or not in writing?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Okay.  Mr. Seibert, did you and your

1  client both sign the agreement?

2          MR. SEIBERT:  Yes, we did Judge.

3          THE COURT:  Did you discuss the contents of every

4  section, subsection, paragraph, and subparagraph of the entire

5  agreement with your client before he signed it?

6          MR. SEIBERT:  Yes, we did, Judge.  And I also gave

7  him a copy for his own reference, too.  He's in possession of

8  it.  He was able to look at it.

9          THE COURT:  Great.  Does the agreement represent the

10  entire agreement between your client and the government?

11          MR. SEIBERT:  To my understanding, yes, Judge.

12          THE COURT:  Okay.  Well, I mean, you'd understand

13  better that anyone.

14          MR. SEIBERT:  Yes.

15          THE COURT:  Okay.  Did you review the facts of the

16  case and all the discovery provided by the government with

17  your client?

18          MR. SEIBERT:  I did, Judge.  And I also turned over

19  all the discovery with my client copies.  He's in full

20  possession of every document that's been issued by this Court,

21  other than anything that was placed under seal.

22          THE COURT:  Did you discuss with him any potential

23  defenses he might have?

24          MR. SEIBERT:  Yes, Your Honor.

25          THE COURT:  Did you and your client agree that it was

1  in his best interest to enter into this agreement?

2          MR. SEIBERT:  Yes, Your Honor.

3          THE COURT:  Do you believe he entering this agreement

4  freely and voluntarily, with a full knowledge of the charge

5  that he's pleading guilty to, and a complete understanding of

6  the consequences to him of pleading guilty?

7          MR. SEIBERT:  Yes, Your Honor.

8          THE COURT:  Have there been any promises,

9  representations, or guarantees made either to you or to your

10  client, other than those in the written plea agreement?

11          MR. SEIBERT:  No, Your Honor.

12          THE COURT:  And other than what's contained in the

13  written plea agreement and a discussion of the sentencing

14  guidelines and other sentencing considerations, have you

15  promised your client any specific sentence, or conveyed to him

16  a particular sentence that you think the Court would impose in

17  the event that the Court accepts his plea of guilty?

18          MR. SEIBERT:  No, Your Honor.

19          THE COURT:  Do you know any reason why I should not

20  accept your client's plea?

21          MR. SEIBERT:  No.

22          THE COURT:  And do you join in his waiver of a jury

23  trial and concur in the plea?

24          MR. SEIBERT:  Yes, Your Honor.

25          THE COURT:  Ms. Lamarque, other than what's expressly

Case 1:17-cr-00218-LJV-HKS   Document 46   Filed 08/10/20   Page 46 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

46

1    contained in the written plea agreement, has the government

2    made any promises, representations, or guarantees either to

3    the defendant or to his attorney?

4            MS. LAMARQUE:  No, Your Honor.

5            THE COURT:  And does the government waive its right

6    to a jury trial?

7            MS. LAMARQUE:  It does.

8            THE COURT:  Mr. Aurand, are you satisfied with the

9    representation your lawyer has provided to you today, and

10   prior to today?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Have you told your lawyer everything you

13   know about your case?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Do you believe he's fully considered any

16   defense you may have?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Do you think he's fully advised you about

19   the case?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Have you had enough time to discuss the

22   case with him?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Have all your answers to all my questions

25   been the truth?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Have you understood everything I've said

3   and every question you've answered?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Do you think you understand the

6   consequences to you of pleading guilty?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Do you think you're competent to make the

9   decision to plead guilty?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you know any reason why I should not

12  accept your plea of guilty?

13          THE DEFENDANT:  No.

14          THE COURT:  Do you understand, then, that if I accept

15  your plea of guilty, all that will remain in your case will be

16  the imposition of a sentence, which will include imprisonment?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Having in mind everything we've discussed

19  regarding your plea of guilty, the rights you'll be giving up,

20  the mandatory minimum, the maximum sentence you may receive,

21  and all the other consequences that we've talked about, the

22  sex offender registration, the possibility of civil

23  commitment, the restitution, the forfeiture, and I'm sure I'm

24  not thinking of everything now, but everything we've talked

25  about, do you still want to plead guilty?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do counsel for the government and for

3     Mr. Aurand agree that I've complied with the requirements of

4     Rule 11?

5          MS. LAMARQUE:  Yes, Your Honor.

6          MR. SEIBERT:  Yes, Your Honor.

7          THE COURT:  Mr. Aurand, in case 17-CR-218, how do you

8     plead to Count 2, distribution of child pornography?

9          THE DEFENDANT:  Guilty.

10          THE COURT:  I'm going to make certain findings now,

11     Mr. Aurand.  If you don't understand what I say, or if you

12     disagree with what I say, or if you just want to talk to your

13     lawyer for whatever reason, interrupt me or ask your attorney

14     to interrupt me, and we'll address your concern.

15          In the case of United States versus Shane Aurand, the

16     Court has questioned the defendant and his attorney on the

17     offer of his plea of guilty to Count 2 of the indictment, a

18     felony.

19          The defendant and his attorney have advised the Court

20     that they've conferred concerning the offered plea of guilty,

21     all aspects of the charge against the defendant, and any

22     defenses that he may have.

23          The Court has observed the defendant's intelligence,

24     demeanor, and attitude while answering questions, and the

25     Court has observed that the defendant does not appear to be

1   under the influence of any medicine, drug, or other substance

2   or factor that might affect his actions or his judgment in any

3   way.  Based on all that, the Court finds that the defendant is

4   fully competent and capable of entering an informed plea.

5          The Court also finds that the plea of guilty is made

6   knowingly, voluntarily, and intelligently, with a full

7   understanding of the nature of the charge, the consequences of

8   the plea, and the defendant's constitutional rights.

9          The Court also finds that the plea is supported by an

10  independent factual basis that includes each of the essential

11  elements of the crime.

12         The Court, therefore, accepts the defendant's plea of

13  guilty, and defers acceptance of the plea agreement pursuant

14  to sentencing guidelines Section 6B1.1(c), and the defendant

15  is adjudged guilty of Count 2.

16         A written presentence report will be prepared by the

17  probation office to assist the Court.

18         Mr. Aurand, you'll be asked to meet with a probation

19  officer and to provide information for that report.  Your

20  lawyer may be present with you if you wish, and your lawyer

21  should be present with you when you meet with a probation

22  officer.  Both of you will be able to read the report and to

23  file any objections before the sentencing hearing.  You'll be

24  able to submit any additional information and any motions that

25  are consent with the terms and conditions of the plea

Case 1:17-cr-00218-LJV-HKS   Document 46   Filed 08/10/20   Page 50 of 52
USA v Shane Aurand - Change of Plea Hearing - 3/23/18

50

1    agreement and the plea that you just entered.  And both you

2    and your attorney will be able to speak on your behalf at the

3    sentencing hearing.

4           The defendant is referred to the probation officer

5    for a presentence report.

6           The date for sentencing, Ms. Demma?

7           THE CLERK:  June 26th, 2018, at 9:30 a.m.

8           THE COURT:  Does that work for counsel?

9           MR. SEIBERT:  I have 6/26/18 at 9:30.

10          THE CLERK:  Yes.

11          THE COURT:  That's good?

12          MS. LAMARQUE:  That's fine, Your Honor.

13          THE COURT:  Terrific.  Okay.  You're all ordered to

14   appear on that date and at that time without any further

15   notice or order of the Court.

16          The Court will issue a preliminary order of

17   forfeiture for certain property, as we discussed earlier.

18   Ms. Lamarque, you'll prepare that order for me?

19          MS. LAMARQUE:  I will, Your Honor.

20          THE COURT:  Okay.  Great.  And is there anything

21   further that we need to do today?

22          MS. LAMARQUE:  Nothing further, Your Honor.

23          THE COURT:  Anything further from the defense?

24          MR. SEIBERT:  No, Judge.

25          THE COURT:  The defendant is remanded to the custody

1    of the marshals.  We'll see you folks at sentencing.

2              MS. LAMARQUE:  Thank you.

3              MR. SEIBERT:  Thank you, Your Honor.

4              (Proceedings concluded at 10:47 a.m.)

5              *     *     *     *     *     *     *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATION

2

3            I certify that the foregoing is a

4        correct transcription of the proceedings

5        recorded by me in this matter.

6

7

8

9                    s/ Ann M. Sawyer
                     Ann M. Sawyer, FCRR, RPR, CRR,
10                   NYRCR, NYACR, Notary Public
                     Official Reporter
11                   U.S.D.C., W.D.N.Y.

12

13

14

15

16

17

18

19

20

21

22

23

24

25