1          **UNITED STATES DISTRICT COURT**
           **WESTERN DISTRICT OF NEW YORK**
2

3    _____

     UNITED STATES OF AMERICA,
4                                      Case No. 1:17-CR-218
                    Plaintiff,                    (LJV)
5
     vs.                               October 23, 2018
6
     SHANE AURAND,
7
                    Defendant.
8    _____

9
                    **TRANSCRIPT OF SENTENCING**
10      **BEFORE THE HONORABLE LAWRENCE J. VILARDO**
              **UNITED STATES DISTRICT JUDGE**
11

12   APPEARANCES:           JAMES P. KENNEDY, JR.
                            UNITED STATES ATTORNEY
13                          BY: STEPHANIE O. LAMARQUE, ESQ.
                            Assistant United States Attorney
14                          Federal Centre
                            138 Delaware Avenue
15                          Buffalo, New York 14202
                            For the Plaintiff
16
                            TRBOVICH LAW FIRM
17                          BY: MICHAEL SEIBERT, ESQ.
                            1967 Wehrle Drive
18                          Suite 1
                            Williamsville, New York 14221
19                          For the Defendant

20   PROBATION:             NATALIE B. WHITMAN, USPO

21   DEPUTY CLERK:          COLLEEN M. DEMMA

22   COURT REPORTER:        ANN M. SAWYER, FCRR, RPR, CRR,
                            NYRCR, NYACR, Notary Public
23                          Robert H. Jackson Courthouse
                            2 Niagara Square
24                          Buffalo, New York 14202
                            Ann_Sawyer@nywd.uscourts.gov
25

1             (Proceedings commenced at 11:04 a.m.)

2             THE CLERK:  All rise.  United States District Court

3    for the Western District of New York is now in session, the

4    Honorable Lawrence J. Vilardo presiding.

5             THE COURT:  Please be seated.

6             THE CLERK:  17-CR-218, United States of America

7    versus Shane Aurand.

8             Assistant United States Attorney Stephanie O.

9    Lamarque appearing on behalf of the government.

10            Attorney Michael Seibert appearing with defendant.

11   Defendant is present.

12            Also present is United States Probation Officer

13   Natalie B. Whitman.

14            This is the date set for sentencing.

15            THE COURT:  Good morning, everyone.

16            ALL PARTIES:  Good morning, Your Honor.

17            THE COURT:  Before we begin, I want to give both

18   sides notice of an additional condition of supervised release

19   that I am contemplating imposing, and that is a general mental

20   health treatment condition.

21            I've read everything, and especially the

22   psychologist's report.  And he seems to recommend that in

23   addition to the special condition with respect to sex offender

24   treatment, that Mr. Aurand also get some general mental health

25   treatment, as well.  And so I'm giving serious consideration

1    to imposing that.

2          I note that that was -- I don't believe, Ms. Whitman,

3    that's not in your set of conditions; is that right?

4          USPO WHITMAN:  That's correct, Your Honor.

5          THE COURT:  Yeah.

6          USPO WHITMAN:  But we would not be opposed to that.

7          THE COURT:  Yeah, I figured as much.  But I just

8    wanted to make sure that the defense doesn't want to be heard

9    in opposition to that, or that the prosecution doesn't have

10   anything to say about it.  I wouldn't assume the prosecution

11   would have anything to say.

12         MS. LAMARQUE:  No, Your Honor.

13         THE COURT:  Do you want to talk to your client about

14   that for a minute and see what your position is?

15         MR. SEIBERT:  Judge, we do not oppose it.  Actually,

16   he would like that.

17         THE COURT:  Okay, great.  Terrific. Good. Thank you.

18         So, Mr. Aurand is before the Court for sentencing on

19   his previous plea of guilty to Count 2 of the indictment, and

20   that charged that he knowingly distributed child pornography

21   using interstate commerce facilities in violation of 18,

22   United States Code, Sections 2252A(a)(2)(A) and 2252(a)(b)(1).

23         We're going to begin with some questions that I have

24   for the lawyers and for you, Mr. Aurand, about the presentence

25   investigation report.

1          I'm then going to make sure that I've received and

2   read all the sentencing-related submissions.

3          I will then make some findings of fact, and calculate

4   the applicable guidelines sentencing range.  Then before I

5   state the sentence, I'm going to give counsel for both sides

6   and you, Mr. Aurand, an opportunity to address the Court or to

7   bring up anything else that you think is relevant to

8   sentencing.

9          So are there any questions before we begin?  From the

10  government?

11          MS. LAMARQUE:  No, Your Honor.

12          THE COURT:  From the defense?

13          MR. SEIBERT:  No, Judge.

14          THE COURT:  Okay.  So let me ask, first, Mr. Seibert,

15  have you had enough time to read the presentence report that

16  was prepared on May 17th, 2018?

17          MR. SEIBERT:  Yes, I have, Judge.

18          THE COURT:  And have you reviewed it with your

19  client?

20          MR. SEIBERT:  Yes, we have.

21          THE COURT:  And, Ms. Whitman, there have been no

22  revisions since May 18th, 2018; is that right?  Or, May --

23  May 17th.

24          USPO WHITMAN:  That's correct, yes.  That is correct.

25          THE COURT:  Did you explain the contents of the

```
 1   report to Mr. Aurand?

 2             MR. SEIBERT:  Yes.

 3             THE COURT:  And do you have any concerns about his

 4   ability to understand it?

 5             MR. SEIBERT:  No, Judge, I believe --

 6             THE COURT:  Okay.  Now, Mr. Aurand -- I'm sorry?

 7             MR. SEIBERT:  -- I believe he did understand it.

 8             THE COURT:  Okay.  Mr. Aurand, did you receive a copy

 9   of the presentence report that was prepared on May 17th?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Okay.  And did your attorney explain it

12   to you?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you understand it?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you have any questions about it?

17             THE DEFENDANT:  No.

18             THE COURT:  Do you need more time to review it with

19   your lawyer?

20             THE DEFENDANT:  No.

21             THE COURT:  Okay.  So, let me ask first, Mr. Seibert,

22   I don't believe that the defendant submitted a statement with

23   respect to sentencing factors; is that right?

24             You submitted a sentencing memorandum.

25             MR. SEIBERT:  Yes, Judge.  We submitted a memo.
```

 1          THE COURT:  Okay.  So let me ask you this:  Does the

 2    defendant want to contest or change any of the findings in the

 3    presentence report?

 4          MR. SEIBERT:  Not that I'm aware of, Judge.

 5          THE COURT:  Well, I need to know now.  Is there

 6    anything you want to contest or change?

 7          THE DEFENDANT:  No.

 8          MR. SEIBERT:  No, Judge.

 9          THE COURT:  Okay.  And that includes the facts, as

10    well as the guidelines calculation, Mr. Seibert?

11          MR. SEIBERT:  We went through the facts and the

12    calculations.  Of course, my client is a little upset with it.

13    But, however, the facts are the facts.

14          THE COURT:  Okay.  And you -- so you don't want to

15    contest either the facts or the guidelines calculation; is

16    that right?

17          MR. SEIBERT:  Yes, Judge.

18          THE COURT:  Okay.  And, Mr. Aurand, do you want to

19    contest or change anything in the report?

20          THE DEFENDANT:  No.

21          THE COURT:  Okay.  Ms. Lamarque, does the government

22    want to contest or change anything in the report?

23          MS. LAMARQUE:  No, Your Honor.

24          THE COURT:  And, again, that includes both the facts

25    and the guidelines calculation; is that right?

```
 1            MS. LAMARQUE:  That's correct.

 2            THE COURT:  Okay.  Mr. Seibert, I've received the

 3   defendant's presentence memo, and that attaches a 23-page

 4   forensic mental health evaluation by Dr. Heffler.  Is that

 5   everything?

 6            MR. SEIBERT:  Judge, yes.  I believe there was also

 7   some letters that we submitted on that day.

 8            THE COURT:  I don't know that I've received any

 9   letters.

10            MR. SEIBERT:  My understanding is the letters were

11   also sent and received.

12            MS. LAMARQUE:  I did it not receive any letters,

13   Your Honor.

14            LAW CLERK:  I didn't see any letters, but --

15            THE COURT:  Do you have the letters with you?

16            MR. SEIBERT:  Yes, I do, Your Honor.

17            THE COURT:  Okay.  Could you hand them up?

18            MR. SEIBERT:  Judge, may I approach?

19            THE COURT:  Sure.

20            THE CLERK:  Here, I'll take them.

21            THE COURT:  Yeah, I have not seen these.

22            MR. SEIBERT:  Judge, those were submitted, my

23   understanding, they went through with the presentence

24   memorandum, because we wanted to be in compliance to make sure

25   they were received three days before.  So they were sent in, I
```

1    believe, about a week before the original sentencing date.

2          THE COURT:  Yeah, so I have document 34,

3    presentencing memorandum submitted on behalf of defendant

4    Shane Aurand.  It is 33 pages.  And it consists of a 10-page

5    memorandum, and then a 23-page -- 23-page forensic report by

6    Dr. Heffler.  I have nothing else.

7          MR. SEIBERT:  I'm not sure how you didn't get it,

8    Judge, but like I said, it was sent in.  We sent it on the

9    same date with the memorandum and the -- because on that day,

10   we actually tried to file it under seal, and that request was

11   denied, and that's when it was just sent normal, through a

12   normal process.

13         THE COURT:  And you haven't seen these yet,

14   Ms. Lamarque?

15         MS. LAMARQUE:  I have not, Your Honor.

16         THE COURT:  Okay.  So, let's -- let's take a break.

17   Let me get some copies of these things made.

18         Ms. Lamarque, you haven't seen them.  So I'll give

19   you a chance to argue that I shouldn't consider these, if

20   that's what you want to do, after you've had a chance to take

21   a look at them.

22         But let's take a break for about a half an hour while

23   we make some copies and take a look at these things, and check

24   and see whether there has been something filed.  I certainly

25   didn't see anything, and neither did my law clerk, and neither

1   did Ms. Lamarque, which leads me to believe that these were

2   not filed.  But let's take a look and see, and we'll deal with

3   this when I get back.

4            MS. LAMARQUE:  Thank you.

5            THE COURT:  Okay?

6            MR. SEIBERT:  I'll call my office and ask them.

7            THE COURT:  That's okay.

8            MR. SEIBERT:  On that date, I knew three days before.

9   I went in my office, and I said, were all these filed?  And

10  they showed me and said, yes, everything and the memorandum

11  was filed.

12           THE COURT:  Okay.  Let me -- let me check, and we'll

13  take a look at it.

14           Okay.  Thanks.  I'll be right back.

15           (Off the record at 11:12 a.m.)

16           (Back on the record at 11:36 a.m.)

17           THE CLERK:  All rise.

18           THE COURT:  Please be seated.

19           THE CLERK:  We are back on the record for the

20  sentencing in case number 17-CR-218, United States of America

21  versus Shane Aurand.

22           All counsel and parties are present.

23           THE COURT:  Ms. Lamarque, do you want to be heard?

24           MS. LAMARQUE:  Yes, Your Honor.  I have reviewed the

25  letters.  I conferred with Mr. Seibert.  The government has no

1    objection to the Court considering the content of the letters.

2          THE COURT:  Okay.  Thank you.  So, I have reviewed

3    the letters myself, and --

4          MR. SEIBERT:  Judge, before we begin, I do want to

5    apologize to you.  I did call my office.  I believe where the

6    snafu was, is they tried to make it an attachment.  And it's

7    my understanding that there's some problems with the system

8    when you try to attach to an original document.

9          THE COURT:  As someone who is technologically

10   challenged himself, I -- I understand that, and no apology is

11   necessary.  I know you tried to get these submitted, and

12   sometimes even with our best efforts, things don't get

13   submitted.

14         And Ms. Lamarque has graciously agreed not to oppose

15   my consideration to these, so no harm, no foul, as far as I am

16   concerned.

17         MR. SEIBERT:  And I thank Ms. Lamarque for that, too.

18         THE COURT:  Yep.

19         MR. SEIBERT:  Because I do know about the three-day

20   rule.

21         THE COURT:  Yeah.  No, no.  And Ms. Lamarque knows

22   that, but she's a reasonable prosecutor, and I think she's

23   making the right decision to not to oppose this.  And as I

24   say, it's not a big deal.

25         So, but I do want for the record to indicate the

1   letters that I've reviewed.  So I've reviewed a letter from

2   the defendant himself.

3          I've reviewed a letter from Heather Battaglia, who is

4   his mother.

5          I've reviewed a letter from Jacqueline Mattucci, who

6   is his great grandmother.

7          I've reviewed a letter from Linda -- it looks like

8   Mohark?  Mohark?  Is that right?

9          MR. SEIBERT:  I believe so.

10          THE COURT:  M-O-H-A-R-K, it looks like to me?

11          MR. SEIBERT:  Let me see, Judge.  Which one was that,

12   Judge?

13          THE COURT:  Linda --

14          THE DEFENDANT:  Oh.  Mohawk.

15          THE COURT:  Mohawk.

16          MR. SEIBERT:  Yes, Judge.

17          THE COURT:  Okay.  So, Linda Mohawk.

18          And then, finally, a letter -- and I can't read the

19   signature, it's this one.  It's handwritten.

20          MR. SEIBERT:  What's this one right here?

21          THE COURT:  Can you make it out, Ms. Lamarque?

22          MS. LAMARQUE:  It looks like maybe Seneca Mohawk?

23          GALLERY MEMBER:  Yeah.

24          MR. SEIBERT:  Yes, Judge.  Seneca Mohawk.

25          THE COURT:  Seneca Mohawk?

1              MR. SEIBERT:  They're actually present in the

2    courtroom, who wrote those letters.

3              THE COURT:  Okay.  So I've read those letters.  Are

4    those all the letters that you've submitted.

5              MR. SEIBERT:  There should have been one from Heather

6    Battaglia.

7              THE COURT:  I said that.

8              MR. SEIBERT:  Yep.  That's it, Judge.

9              THE COURT:  Okay.  And so is that everything, then?

10             MR. SEIBERT:  That's everything, Your Honor.

11             THE COURT:  Okay.  And is there anything else you

12   would like to submit in writing?

13             MR. SEIBERT:  No, Judge.

14             THE COURT:  Okay.

15             MR. SEIBERT:  Judge, one request.  We did file this

16   online.  However, there is a medical report attached to my

17   online filing.  And I don't know if I'm allowed to do this,

18   but I'd ask somehow if we can move the -- put his memorandum

19   or the -- Dr. Heffler's report retroactively under seal.

20             THE COURT:  Any problem with that, Ms. Lamarque?

21             MS. LAMARQUE:  No, Your Honor.

22             THE COURT:  Yeah.  So we will do that.  Well, Liam's

23   not here.  Colleen, can you --

24             THE CLERK:  Yes, I'll do that.

25             MR. SEIBERT:  Because I originally filed that, and

1   asked if we could file it under seal.  But I don't believe

2   that at the time, that anybody knew that I was going to be

3   attaching that doctor's report to it.

4            THE COURT:  Okay.

5            MR. SEIBERT:  And when our motion was denied to file

6   it under seal, we filed it the anyways the way we were

7   supposed to.

8            THE COURT:  Yep.

9            MR. SEIBERT:  But I believe looking at it, that

10  something like that probably shouldn't be accessible to

11  anybody online.

12           THE COURT:  Yeah.  I think that that's -- I think

13  that that's right.  So, yeah, we will -- we will file that

14  under seal.

15           Ms. Lamarque, I've received the government's

16  statement with respect to sentencing factors and the

17  government's sentencing memorandum.  Is that everything?

18           MS. LAMARQUE:  It is.

19           THE COURT:  And have there been any statements from

20  victims submitted?

21           MS. LAMARQUE:  No, there were no victim statements

22  submitted.

23           THE COURT:  Okay.  And does the government want to

24  submit anything else in writing?

25           MS. LAMARQUE:  No.

1        THE COURT:  Okay.  I previously accepted the

2   defendant's plea of guilty to Count 2, charging that the

3   defendant knowingly distributed child pornography in violation

4   of 18, United States Code, Sections 2252(a)(a)(2)(A), and

5   2252(a)(b)(1).

6        At that time, I deferred acceptance of the plea

7   agreement.  I now accept the terms and conditions of the plea

8   agreement that was signed on March 23rd, 2018, and the

9   judgement and sentence will be consistent with it.

10       I note that in the plea agreement, the government has

11   agreed to move to dismiss open counts of the indictment

12   against the defendant.  So I'd also make a finding that the

13   charge to which the defendant pled guilty, that is Count 2,

14   adequately reflects the seriousness of the actual offense

15   behavior, and that accepting the agreement will not undermine

16   the statutory purposes of sentencing or the guidelines.

17       The plea agreement provides that the guidelines range

18   will be determined as if the defendant were convicted of

19   production of child pornography, which is one of two other

20   charges in the indictment.  The third charge is mere

21   possession.

22       So because the defendant is pleading to distribution,

23   and agreeing that the guidelines be calculated as if the plea

24   were to production, the two more serious charges, the

25   defendant's plea adequately reflects the seriousness of the

1    actual offense behavior, and accepting the agreement is

2    actually consistent with the statutory purposes of sentencing

3    and the guidelines.

4           The government has filed a statement with respect to

5    sentencing factors accepting the United States Probation and

6    Pretrial Service's -- Service Office's presentence report.

7    And while the defendant has not filed a statement with respect

8    to sentencing factors, on the record today, defense counsel

9    and the defendant himself have also accepted the presentence

10   report and have not objected to the facts or the sentencing

11   guidelines calculations in the report.

12          So based on the parties' submissions and their

13   representations today in court, there are no disputes

14   regarding the facts in the presentence report.

15          I've also reviewed that report.  Based on my review,

16   based on the written submissions, and based on the positions

17   taken on the record today, I adopt the facts in the report as

18   my findings of fact, and I incorporate them into the record.

19          I will now place the May 17th, 2018 presentence

20   investigation report in the record under seal.  If an appeal

21   is filed, counsel on appeal will be given access to the sealed

22   report except that counsel on appeal will not be given access

23   to the recommendations section.

24          So, let's now turn to the guidelines, which I must

25   calculate and consider as an important part of my

1    determination of a sentence.

2         I apologize to everyone in court for the very

3    technical nature of what's about to follow, but the guidelines

4    themselves and the reasons behind the guidelines make this a

5    necessary step in the process.

6         Based on the parties' submissions and their

7    representations today in court, there also are no disputes

8    regarding the recommendations in the presentence investigation

9    report as to the applicable sections of the United States

10   Sentencing Commission's advisory guidelines.

11        Under guidelines Section 1B1.2(a), the government and

12   the defendant have agreed that the defendant's sentencing

13   range for imprisonment and a fine will be determined as if the

14   defendant were convicted of production in violation of 18,

15   United States Code, Section 2251(a).

16        So the presentence investigation report calculates,

17   under the 2016 version of the guidelines manual, that

18   Section 2G2.1(a) provides for a base offense level of 32.

19        The report then recommends that pursuant to

20   guidelines Section 2G2.1(b)(1)(A), the offense level be

21   increased by four levels, because the offense involved a minor

22   who had not attained the age of 12 years.  32 plus 4 is 36.

23        The report recommends that under

24   Section 2G2.1(b)(2)(A), the offense level be increased by

25   another two levels, because the offense involved some sexual

1    contact.  36 plus 2 is 38.

2            The report then recommends another two-level increase

3    under Section 2G2.1(b)(3) because the defendant knowingly

4    engaged in the distribution of child pornography.  38 plus 2

5    brings us to 40.

6            The report then recommends another two-level increase

7    under Section 2G2.1(b)(5) because the minor victim was in the

8    custody and care of the defendant at the time of the offense.

9    40 plus 2 is 42.

10           And the report then recommends another two-level

11   increase under Section 3A1.1(b)(1) because the victim was

12   sleeping, and the defendant, therefore, should have known the

13   victim of the offense was a vulnerable victim.  42 plus 2

14   is 44.

15           The report then recommends that the offense level be

16   decreased by two levels under Section 3E1.1(a) of the

17   guidelines because the defendant has accepted responsibility

18   for his conduct.  And in its statement with respect to

19   sentencing factors, the government has moved for an additional

20   one-level decrease of the offense level under

21   Section 3E1.1(b).  I grant that motion by the government.

22           So based on this, the presentence investigation

23   report calculates the total offense level to be 41.  We were

24   at 44, minus 2, minus 1, is 41.

25           The report then calculates the defendant's criminal

1    history category as I based on a criminal history score of

2    zero.

3           Based on my factual findings, I agree with the

4    report's calculations of the offense level and the criminal

5    history category.

6           So, with a total offense level of 41, and a criminal

7    history category of I, the presentence investigation report

8    calculates the applicable guidelines range as follows:

9           A guideline term of imprisonment of 240 months, which

10   is the statutory maximum, and which is actually less than the

11   guidelines range on the guidelines table.  But because it's

12   the statutory maximum, it becomes the guidelines range.  So

13   the guideline term of imprisonment is 240 months.

14          The fine range is $50,000 to $250,000.  The

15   supervised release is five years to life.  And there is a

16   mandatory special assessment that I must impose, and if the

17   defendant is not indigent, Justice For Victims of Trafficking

18   Act assessment of $5,000.

19          I agree with all those calculations in the

20   presentence report, as well.

21          Mr. Aurand, under the Supreme Court's decision in

22   United States versus Booker and the Second Circuit's decision

23   in United States versus Crosby, the Court must consider the

24   guidelines, but it's not bound by them.

25          The Court also must consider the sentencing factors

1  that are included in 18, United States Code, Section 3553(a),

2  and those factors include: the nature and circumstances of the

3  offense; your history and your characteristics; the need for

4  the sentence to reflect the seriousness of the offense, to

5  promote respect for the law, and to provide a fair punishment

6  to you; the need to deter others from committing crimes and to

7  protect the public from your crimes; the need to provide you

8  with educational or vocational training in an attempt to

9  rehabilitate you; the types of sentences that are available;

10  any policy statements issued by the Sentencing Commission;

11  sentences given to others who committed crimes similar to the

12  one to which you pleaded guilty; and the need for restitution

13  for victims.

14       I'm going to take all those factors into account, but

15  before I impose sentence, I want to give the attorneys and you

16  an opportunity to address me to raise anything you think is

17  relevant to sentencing.

18       So we're going to start with the prosecutor.

19  Ms. Lamarque, does the government want to make any remarks?

20       MS. LAMARQUE:  Yes, Your Honor.  Obviously, the

21  conduct in this case is heinous, and that's why the government

22  is recommending a sentence of 20 years.  Looking at all the

23  factors under 3553(a) it would be appropriate.

24       In fact, the guidelines would be much higher but for

25  the plea agreement that Mr. Seibert negotiated.  He's kept out

1    at 20 years in this case.  If he had been convicted at trial,

2    he would be facing up to 33 years, which the government would

3    have advocated for.

4            The abuse that the victim suffered at this

5    defendant's hands, that will haunt her forever, it will haunt

6    her mother forever.

7            Since he distributed those images of the abuse, those

8    images are out there.  They're out there forever.  She'll have

9    to live with that the rest of her life.

10           And distribution is just one of the aggravating

11   factors in this case.  There are many, many aggravating

12   factors, some of which the guidelines do account for, and some

13   of which I don't think the guidelines account for.

14           The chats that the defendant had with the undercover

15   agent, they're nothing short of disturbing.

16           And I note that the chats took place many, many

17   months after the abuse actually happened.  He stated to the

18   agent that even when the victim was awake when he was

19   babysitting her, he was grabbing her all over, he was tickling

20   her, and that was for his own sexual pleasure.

21           To the government, it indicates that he was grooming

22   her for further sexual contact.

23           He gave the agent advice on how to drug children so

24   that he could sexually abuse them while they were passed out.

25           He repeatedly requested that the man who he thought

1   he was talking to abused a 9-year-old girl, who he thought was

2   the person's daughter.

3          So, it's clear that the actions in this case were not

4   just an impulsive lack of control for one night.  It was more

5   a pattern of conduct.  And I think that reflects the nature

6   and the defendant's history.

7          The report from Dr. Heffler is also pretty

8   unsettling.  I don't think I've ever seen a report from

9   Dr. Heffler that has this tone.

10         And even though he recognized that the defendant does

11  have a capacity for victim specific empathy and remorse, based

12  on that report and the statements in the PSR, it appears that

13  maybe the defendant is still working through some of those

14  issues.

15         The report reflects a high rate of recidivism.

16         The defendant endorsed the following statements which

17  he believed at the time of the offense:

18         If a person is attracted to sex with children, he

19  should solve that problem himself and not talk to

20  professionals.

21         If a person tells himself that he won't molest again,

22  then he probably wasn't.

23         Sometimes molesters suffer the most, lose the most,

24  or hurt the most as a result of a sexual assault on a child,

25  more than a child suffers.

1          And sometimes kids don't say no to sexual activity

2   because they are curious or enjoy it.

3          So while he's clearly accepted responsibility for

4   what he's done in this case, based on this report and the

5   statements in the PSR, his concern seems to be more with him

6   throwing his life out of the window than really any concern

7   that has conduct has had on the victim in this case, and

8   bettering himself in the future.

9          So, for those reasons, the government is also asking

10  for the imposition of a lifetime sentence of supervised

11  release.

12          THE COURT:  Let me ask you this, Ms. Lamarque.

13  Dr. Heffler also, in his report, includes his opinion that

14  some of the things that the defendant suffered as a young

15  child caused him to act this way.  It certainly doesn't

16  justify it, but may explain it.

17          Shouldn't I take that into account in imposing a

18  sentence?

19          MS. LAMARQUE:  You could take that into account,

20  Your Honor.  I would note that I think as a mitigating factor,

21  there are so many other aggravating factors that 20 years is

22  appropriate.

23          And it's difficult to accept an explanation of prior

24  abuse, because there are so many young girls who get abused

25  who don't go on to abuse.

1          So the Court, yes, you can consider his childhood and

2    the abuse that he's faced, and the hard times that he suffered

3    as a child.  But I would also ask that you look at the

4    multitude of aggravators in this case.

5          THE COURT:  Let me ask you, are -- have all victims

6    entitled to notice been given notice?

7          MS. LAMARQUE:  Yes.  And I do want to note for the

8    Court that the victim's mother is present in the courtroom.

9    She does not want to speak, but she did want to be present.

10         THE COURT:  Okay.  But everyone who's entitled to

11   notice has been given notice?

12         MS. LAMARQUE:  Yes.

13         THE COURT:  And no one submitted a statement, and no

14   one wants to speak; is that correct?

15         MS. LAMARQUE:  No, Your Honor.  But in the PSR, the

16   victim's mother did put a small statement.

17         THE COURT:  Absolutely.  Yeah.  No, no, I recognize

18   that.

19         MS. LAMARQUE:  Okay.

20         THE COURT:  I want to make sure that I'm giving any

21   victim an opportunity to say what any victim wants to say.

22         MS. LAMARQUE:  There's nothing additional.

23         THE COURT:  All right.

24         MS. LAMARQUE:  Thank you.

25         THE COURT:  Terrific.  Okay.

1          Mr. Seibert?

2          MR. SEIBERT:  Judge, I do understand that some of the

3  comments he made to Dr. Heffler may sound a little egregious,

4  but those were multiple choices where he only had the ability

5  to pick from one or two answers.  Those were not Mr. Aurand's

6  answers that he just blurted out.

7          He was given, on each part of this test, there's no

8  part of the test where he's allowed to give his own answer.

9  Everything is multiple choice.

10          THE COURT:  It's whether he agrees with something or

11  not.

12          MR. SEIBERT:  It's this or that.

13          THE COURT:  Yeah, I get that.

14          MR. SEIBERT:  So I can understand that they sound

15  egregious, but the alternative that he had to choose from was

16  a lot worse of what would have been said today.

17          Now, we do know there's a victim in this case, and

18  there's nothing Mr. Aurand can do to go backwards and change

19  what happened on that day.

20          I do want the Court to note that while this happened,

21  Shane was only 19 years old.  It's not an excuse.  But Shane,

22  if you read Dr. Heffler's report, does function at a lower age

23  level than he is.  He was only 19 at the time, he has no GED,

24  or a high school diploma.

25          He was a victim of molestation himself, and I don't

1  believe Mr. Aurand understood the severity of what he was

2  getting involved in.

3       He knew it was wrong.  Don't get me wrong with that.

4  He knew it was wrong.  But I don't believe he understood the

5  exact severity of what he was doing.  Because as being

6  molested himself, in telling people what happened, went to

7  authorities, nothing happened to the people that did this to

8  him.  Nothing.  Weren't even arrested.

9       And while Shane is struggling with the realization

10  that his life will never be the same, he is hopeful that he

11  can take all the negativity and harm that he has caused and

12  turn it into a positive outcome.

13       Shane understands that he faces incarceration, and

14  while he is terrified at the prospect of being incarcerated

15  and away from his family, he plans to make the best out of any

16  sentence the Court imposes.

17       Shane is dedicated to seeking out every possible

18  treatment option available, and knows that the mistakes and

19  the harm that he has caused to the victim are not who he is.

20       Shane is confident that with the love and support of

21  his family and, more importantly, with professional help, he

22  can work towards understanding and overcoming the many mental

23  health issues that he suffers from.

24       He hopes that some day he will be able to earn back

25  the trust he has lost, and once again be a productive citizen.

1        He also knows he's going to be spending a good

2    portion of his life in prison.  And he did try to seek out

3    some help at the Niagara County jail, but unfortunately, in

4    the block they have him in, there's absolutely no help he can

5    be given.

6        His family did want Dr. Heffler to resume services.

7    However, they couldn't afford him at $1,500 a month to go up

8    to the jail to counsel Shane.

9        So we're just hoping that at some point there's

10   something available for him.  He does know he has some issues.

11   He was actually -- it was a relief to him when Dr. Heffler

12   went up there.  At first it was a little aggravating, but then

13   he realized in speaking with Dr. Heffler that there is an

14   issue there, that something does have to be addressed.

15       And throughout this whole process, Shane never said

16   he didn't do this.  He's always taken responsibility.

17       And I believe that when he originally was arrested,

18   he was kind of relieved that he was caught.  It wasn't until

19   afterwards that he realized exactly what he got himself into.

20       And I'd just ask you, Your Honor, to take that into

21   consideration when you're handing out your sentence today.

22   That we're sentencing a 20-year-old man today that did these

23   acts over 19 months ago.

24       Thank you, Judge.

25       THE COURT:  Thank you.

1          Mr. Aurand, anything you would like to say, sir?

2          THE DEFENDANT:  Yes, Your Honor.

3          I'd like to say I'm sorry.  And I know I created a

4    victim.  And it's horrible.  And there's nothing I can do to

5    take it back.  And there's -- and I want the help.  I really

6    do.  There's just -- like, there was -- how can you bring

7    something like that up to someone, you know?

8          And I never -- I -- I -- I feel horrible.  I'm

9    missing out on all my daughter's life and everything in my

10   life.  There's -- there's so much more that I could have done.

11         I'm sorry.  And -- I don't know.  I don't know what

12   else.

13         MR. SEIBERT:  Judge, what I think he's trying to tell

14   you is what he told me.  That when he realized he had this

15   problem, he was scared to go seek help out, because first he

16   thought he would have to admit and get arrested for what he

17   was doing.  And he was completely embarrassed and ashamed of

18   what was he was doing, to try to find that type of help.

19         It's not like you can, like, alcohol or a drug

20   problem.  This is -- society has much more of a stigma on this

21   where he just didn't know where to turn or how to find the

22   help.

23         That's what I meant when I thought he was relieved

24   when Dr. Heffler, where -- it was up.  That everyone knew what

25   was going on, and he was finally going to be treated, and at

1    least his family knew what was going on.

2            THE COURT:  Okay.  Thank you.

3            Does either counsel know of any reason why sentence

4    should not now be imposed?

5            MS. LAMARQUE:  No, Your Honor.

6            MR. SEIBERT:  No, Judge.

7            THE COURT:  Under the Sentencing Reform Act of 1984,

8    and the 2016 version of the sentencing guidelines, it's the

9    judgment of the Court that the defendant, Shane Michael

10   Aurand, is hereby sentenced to 180 months of imprisonment.

11   The cost of incarceration fee is waived.  Upon release,

12   defendant shall be placed on supervised release for life.

13           After his release, the following conditions shall

14   apply:

15           Within 72 hours of release from custody of the Bureau

16   of Prisons, the defendant shall report in person to the

17   probation office in the district where he is released, unless

18   his probation officer instructs him differently.

19           The defendant shall comply with the standard

20   conditions of supervised release adopted by the Court.

21           The defendant shall not commit any crimes under

22   federal, state, or local law.

23           The defendant shall not possess a firearm or any

24   other dangerous device.

25           The defendant shall not possess a controlled

1    substance except as prescribed by a physician.

2          The defendant shall cooperate in the collection of a

3    DNA sample as required by the Justice for All Act of 2004.

4          The defendant shall participate in a program for

5    substance abuse, including substance abuse testing, such as

6    urinalysis and other testing, and shall undergo a drug/alcohol

7    evaluation and treatment if substance abuse is indicated by

8    the testing.

9          The probation officer will supervise the details of

10   any testing and treatment, including the selection of a

11   treatment provider and schedule.  If inpatient is recommended,

12   however, it must be approved by the Court unless the defendant

13   consents.

14         The defendant is not to leave treatment until

15   completion or as ordered by the Court.  While in treatment,

16   the defendant is to abstain from using alcohol.  The defendant

17   is required to contribute to the cost of services rendered.

18         I'm imposing this condition because drug testing is

19   required by the 1994 Crime Control Act, because it serves the

20   statutory sentencing purposes of public protection and

21   rehabilitation, in light of the history of drug use and abuse

22   as noted in paragraphs 94 through 99 of the presentence

23   report.

24         The defendant is also to participate in a mental

25   health treatment program, including a mental health evaluation

USA v Shane Aurand - Sentencing - 10/23/18

1    and any treatment recommended.

2          The probation officer will supervise the details and

3    any testing and treatment, including the selection of a

4    provider and schedule.  If inpatient treatment is recommended

5    however, it must be approved by the Court unless the defendant

6    consents.

7          The defendant is not to leave such treatment until

8    completion or as ordered by the Court.  While in treatment or

9    taking psychotropic medication, the defendant shall abstain

10   from using alcohol.  The defendant is required to contribute

11   to the cost of services rendered.

12         The defendant shall not use or possess any computer,

13   data-storage device, or any internet-capable device, unless

14   the defendant participates in the computer and internet

15   monitoring program, or unless authorized by the Court or the

16   United States Probation Office.

17         The defendant must provide the probation office

18   advanced notification of any computers, automated services, or

19   connected devices that he will use during the term of

20   supervision.

21         The United States Probation Office is authorized to

22   install any application as necessary to surveil all activity

23   on computers or connected devices owned or used by the

24   defendant.

25         The defendant will be required to pay the cost of

1    monitoring services.

2           The probation office shall be notified via electronic

3    transmission of impermissible or suspicious activity, or

4    communications occurring on such computer or connective device

5    consistent with the computer monitoring policy in effect, or

6    the practice currently used by, and therefore, the de facto

7    policy, of the probation office.

8           As triggered by impermissible suspicious activity and

9    based on reasonable suspicion, the defendant shall consent to

10   and cooperate with unannounced examinations of any computer

11   equipment owned or used by the defendant.  This examination

12   shall include, but is not limited to, retrieval and copying of

13   all data from the computers, connected devices, storage media,

14   and any internal or external peripherals, and may involve

15   removal of such equipment for the purpose of conducting a more

16   thorough inspection.

17          Any such monitoring or examination shall be designed

18   to avoid as much as possible reading any privileged

19   information or any private material that is not illegal or

20   reasonable likely to lead to illegal material, or evidence

21   related to illegal activity.

22          This condition serves the statutory sentencing

23   purposes of public protection, deterrence, and rehabilitation,

24   and is imposed in light of the defendant's admitted sexual

25   attraction to minors.

1          The defendant must also participate in a sex offense

2   specific treatment program, and follow the rules and

3   regulations of that program.  The probation officer will

4   supervise the details of the defendant's participation in that

5   program, including the selection of a provider and schedule.

6          The defendant is not to leave treatment until

7   complete or as ordered by the Court.  The defendant is

8   required to contribute to the cost of services rendered.  This

9   condition serves the statutory sentencing purposes of public

10  protection, deterrence, and rehabilitation, and is, again,

11  imposed in light of the facts of this case and the defendant's

12  admitted attraction to minors.

13         The defendant shall not have deliberate contact with

14  any child under 18 years of age, excluding his biological or

15  adopted children, unless approved by the probation officer or

16  the Court.

17         The defendant shall not loiter within 100 feet of

18  school yards, playgrounds, arcades, or other places primarily

19  used by children under the age of 18.

20         The probation office has the discretion to authorize

21  the defendant to pick up his children from school or other

22  functions.  However, authorization must be obtained in advance

23  from the probation office or, alternatively, from the Court.

24  This condition is imposed because it serves the statutory

25  sentencing purposes of public protection, deterrence, and

1  rehabilitation, and in light of the facts of this case and the

2  defendant's attraction to minors.

3        In order to monitor the defendant's compliance with

4  not buying or subscribing to online services that provide

5  child pornography, the defendant shall provide the probation

6  office with access to any requested personal and/or business

7  financial information.  This condition serves the statutory

8  sentencing purposes of public protection, deterrence, and

9  rehabilitation.

10        The defendant shall register with the state sex

11  offender registration agency in any state where he resides, is

12  employed, carries on a vocation, or is a student, and shall

13  provide proof of registration to the probation officer.

14        The probation office is authorized to release the

15  defendant's presentence report to the New York State Board of

16  Examiners of Sex Offenders.  Further disclosure to the county

17  court, and to the parties involved in the determination of the

18  defendant's final classification level is also authorized.

19  And, again, this condition serves the statutory sentencing

20  purpose of public protection.

21        The defendant shall submit to a search of his person,

22  property, vehicle, place of residence, or any other property

23  under his control based on reasonable suspicion, and shall

24  permit confiscation of any evidence or contraband discovered.

25  This condition serves the statutory sentencing purposes of

1    public protection and deterrence.

2         The defendant shall submit to polygraph, computerized

3    voice stress analyzer, or other such testing, not to exceed

4    twice in a calendar year, and an additional two retests per

5    year, as needed.  That testing may include examinations using

6    a polygraph, computerized voice stress analyzer, or other

7    similar device to obtain information necessary for

8    supervision, case monitoring, and treatment.

9         The defendant shall answer questions posed during the

10   examination, subject to his right to challenge in a court of

11   law the use of such statements as violations of his Fifth

12   Amendment rights.  In this regard, the defendant shall be

13   deemed not to have waived his Fifth Amendment rights by making

14   any such statements.

15        The results of any polygraph pretests and polygraph

16   examinations may be disclosed to the probation office and the

17   Court, but shall not be further disclosed without a court

18   order.  The defendant is required to contribute to the cost of

19   services rendered.  This condition serves the statutory

20   sentencing services of public protection, deterrence, and

21   rehabilitation.

22        The defendant shall pay to the United States a

23   mandatory special assessment of $100, that's due immediately.

24   Payment shall be made to the Clerk, United States District

25   Court, Attention Finance, United States Courthouse, 2 Niagara

1    Square, Buffalo, New York, 14202.  If the special assessment

2    is not paid when he is incarcerated, payment of the special

3    assessment shall begin under the Bureau of Prisons Inmate

4    Financial Responsibility program.

5            And I note that in Dr. Heffler's report, he includes

6    some conditions, as well.  I think these conditions are

7    included in the conditions I've already imposed, but just to

8    be belt and suspenders, let me -- let me read those

9    conditions, as well.

10            The defendant shall maintain a waiver of

11   confidentiality, which will permit unlimited communication

12   between his treatment provider and other parties involved or

13   potentially involved in the management of his offending

14   behavior.  Such communication may involve, but is not limited

15   to, police agencies, courts, probation departments, involved

16   or affected family members, attorneys, and other treatment

17   providers.

18            He shall participate in sex offender treatment with a

19   qualified treatment provider for a period to be determined by

20   the treating clinician and the Court, if involved.

21            I think that's already been imposed.

22            He shall refrain from the possession or use of

23   pornographic materials including videos, magazines, or other

24   electronically stored images.

25            He shall participate with psychiatric treatment to

1    include the administration of psychotropic medication, as

2    needed.

3            He shall submit to medically administered and

4    monitored antiandrogen treatment, if that's recommended by the

5    treatment provider.

6            He shall refrain from contact with children, unless

7    the supervision of another adult who is aware of his treatment

8    requirements and is approved by the treating clinician, and

9    that excludes his own children.

10           He shall abstain from all alcohol or illegal

11   substance use, since that may lead to impaired judgment.

12           I've imposed that condition, and I think I'm not

13   going to impose that condition as a blanket condition for the

14   rest of his life since he's going to be on supervised release

15   for life.  But let me just say, I've imposed it while he's

16   taking psychotropic medication, while he's in treatment for

17   that, while he's taking drug treatment.

18           So while there's any treatment involved, either by a

19   psychiatrist, in connection with a general mental health

20   condition that I've imposed, or the sexual offender treatment

21   condition that I've imposed, or by a -- a physician or other

22   medical care provider in connection with the drug treatment

23   that I've imposed, he's to refrain from using alcohol --

24           MR. SEIBERT:  Yes, Judge.

25           THE COURT:  -- as long as there's that treatment

1   going on.

2        He shall refrain from online computer use, except as

3   indicated in the conditions that I've already imposed.

4        And, in addition, he shall refrain from possessing or

5   using digital cameras, PDAs, or cell phones with imaging

6   capabilities, again, except for the condition I've imposed.

7   So if he undergoes and participates in the probation office's

8   computer monitoring program, he can possess those things.

9        And then refrain from employment or volunteer work

10  that permits access to children.  That's, I think, implicit in

11  the other conditions that I've imposed.

12        Submit to periodic clinical polygraph examinations,

13  I've imposed that, as well.

14        So I just wanted to make sure, as I say, belt and

15  suspenders, to impose the conditions that Dr. Heffler included

16  in his report.

17        So, in determining the sentence, I've reviewed the

18  facts of the case and the plea.  I've read all the materials

19  that were submitted to me.  I've read Dr. Heffler's report

20  very carefully.  I began my analysis with the guidelines.

21  I've considered the arguments by both sides as to what the

22  appropriate sentence should be.  And, most importantly, I've

23  considered the factors in 18, United States Code, Section

24  3553(a), which I stated earlier and I won't repeat.

25        I'm not imposing a fine.  I'm not -- and I find the

1  defendant is indigent and, therefore, I do not impose the

2  Justice For Victims of Trafficking Act $5,000 assessment.  I'm

3  also not imposing the costs of imprisonment or the costs of

4  supervised release, all because I don't believe you have the

5  financial ability to make those payments, and because of

6  the -- the inappropriate and inordinate impact that would have

7  on the people on the outside, the people who care about you

8  and are going to be suffering as a result of your

9  incarceration.

10        So, the reason that I've imposed the sentence that

11  I've imposed, first of all, child pornography is a very

12  serious offense in and of itself.  It ruins people's lives.

13  It destroys people's lives.

14        And just looking at child pornography is serious and

15  destructive and -- in ways that I think we can't even

16  contemplate now and don't even know.

17        Here, it's all the more serious, because you

18  mistreated and abused a child who was in your care, and while

19  she was medicated, and while she was sleeping and, therefore,

20  while she was vulnerable.  And you knew that.  You told the

21  undercover agent that.

22        And worse, still, you offered to send inappropriate

23  pictures of your own infant daughter to an undercover agent.

24  That's -- that's awful stuff.

25        And as Ms. Lamarque says, that's -- that's really

1   unimaginable.  I mean, it's horrible.  It's -- and -- and as

2   she says, and as she correctly says, those are aggravating

3   circumstances that -- that call for a significant sentence of

4   imprisonment.

5          Balanced against this, though, as I alluded to when I

6   was talking with Ms. Lamarque, is your age, 19 years old when

7   this occurred, and the abuse that you suffered yourself.

8          And I recognize that you were dealt a tough hand.

9   Your parents had some drug issues when you were very young.

10  You were sent away to live with your father's family, you were

11  abused at that time at a very young age.

12         And when you told adults about what happened, they

13  treated it as if it were normal.  So that can explain, as

14  Dr. Heffler suggests, why you have the issues that you have

15  now.  It doesn't -- it doesn't excuse it.  It doesn't justify

16  it.  It doesn't make it right.  And as Ms. Lamarque says,

17  there are lots of people who are abused that don't go on to

18  abuse people.

19         But I think it does give us a reason for what

20  occurred here, which I see as more than simply evil.  I don't

21  think it's -- I don't think it's evil, I think it's

22  mental-health related and -- and sexuality-related things that

23  you have to come to grips with because of what you've gone

24  through.

25         So, what tipped the balance for me to impose what I

1    consider to be a very serious sentence of 15 years, that's an

2    awful long time, is Dr. Heffler's opinion that there is a high

3    risk of recidivism, especially in the next four years and

4    continuing for ten years.  That scares me.

5         And to protect the public, I think I needed to impose

6    a sentence that was greater than ten years.  And I reached

7    15 years because I felt that that was enough of a cushion to

8    protect society from your crimes, and also to take into

9    account the mental-health issues and the other issues that

10   resulted from your own abuse.

11        And I took into very serious consideration the

12   Second Circuit's admonition that in cases like these, the

13   guidelines often are disproportionate and call for a sentence

14   toward the statutory maximum, which this one would have called

15   for, for the statutory maximum.

16        And I don't think that given your young age, your own

17   history of abuse, the fact that you have a clean record,

18   completely clean record up until now, and given the

19   mental-health issues that Dr. Heffler believes may be

20   treatable, I don't believe that the statutory maximum is an

21   appropriate sentence.

22        So, therefore, taking into account the nature and the

23   circumstances and the seriousness of the offense, based on and

24   balanced against your history and characteristics, and then

25   taking into account the need to impose a sentence that's fair,

1  promotes respect for the law, promotes deterrence, and

2  protects the public from your crimes, I think that 15 years

3  incarceration and lifetime supervised release is an

4  appropriate sentence.

5          The supervised release with special conditions is

6  intended to help you return to society after your

7  incarceration, but it's also going allow the probation office

8  to monitor your activities to ensure that you don't engage in

9  further illegal activity.

10          And because of Dr. Heffler's concerns about

11  recidivism, I agree with Ms. Lamarque that lifetime supervised

12  release is appropriate.

13          I'm also going to recommend that you be incarcerated

14  in a facility that does have the wherewithal to provide the

15  mental health treatment and the sexual offender treatment that

16  you need, as well as the substance abuse treatment that you

17  need.  But primarily, the mental health treatment and the

18  sexual offender treatment, since I think those are the primary

19  concerns here.  The substance abuse, I think, is a secondary

20  concern.

21          And I'm also going to recommend that taking those

22  recommendations into consideration first, that if it's

23  possible, you be housed as close to your family in Western

24  New York as possible so that they have the opportunity to

25  visit you.

1          So, based on the guidelines, based on the positions

2    of the parties, based on my review of all the facts and

3    circumstances presented to me, I think that the sentence I've

4    imposed is sufficient but not greater than necessary to comply

5    with the purposes of sentencing set forth in 18, United States

6    Code, Section 3553(a)(2).

7          Under Rule 32(j)(1)(B) of the Federal Rules of

8    Criminal Procedure, I now advise you of your right to appeal.

9          You have a statutory right to appeal your sentence

10   under certain circumstances, particularly if you think the

11   sentence is contrary to law.  A defendant may waive those

12   rights as part of a plea agreement.

13         Mr. Aurand, as I think you recognize, you entered

14   into a plea agreement in which you waived some of your rights

15   to appeal, specifically your rights to appeal a sentence that

16   falls within or is less than the calculated guidelines range

17   of imprisonment.

18         Waivers like these are generally enforceable.  If you

19   think the waiver is unenforceable for some reason, you can

20   present that theory to the appellate court.

21         If you want to attempt to appeal some issue that you

22   believe survives your waiver, you must file a notice of appeal

23   within 14 days.

24         If you're unable to pay for the cost of an appeal,

25   you can apply for leave to appeal in forma pauperis, that

1    means leave to appeal without paying costs.

2            You have the right to be represented by counsel in

3    any appeal.  If you can't afford counsel, you have the right

4    to have counsel appointed to represent you free of charge.

5            Ms. Lamarque, have there been any requests for

6    restitution?

7            MS. LAMARQUE:  There are none, Your Honor.

8            THE COURT:  Okay.  So you have a motion?

9            MS. LAMARQUE:  Yes.  The government moves to dismiss

10   Counts 1 and 3 of the indictment pending.

11           THE COURT:  That motion is granted. Anything further?

12           MS. LAMARQUE:  Nothing further.

13           THE COURT:  Anything further from the defense?

14           MR. SEIBERT:  No, Judge.

15           THE COURT:  The statement of reasons shall be

16   included in the judgement and shall be provided to the

17   probation office, to the Sentencing Commission, the Bureau of

18   Prisons.

19           A complete copy of the presentence report shall be

20   provided to the probation office, to the Sentencing

21   Commission, and to the Bureau of Prisons.

22           Any other copies of the report and related materials

23   shall remain confidential.

24           If an appeal is taken, counsel on appeal shall have

25   access to the report with the exception of the recommendations

1    section at the end of the report.

2            A judgement of the conviction should be prepared

3    promptly on the form prescribed for judgments, including

4    sentences under the Sentencing Reform Act.

5            And the defendant is remanded to the custody of the

6    marshals.

7            Mr. Aurand, I can see the remorse you have on your

8    face, and I see how distressed you are.  I want you to know

9    that I think that Dr. -- I agree with Dr. Heffler that this

10   may well be treatable, and I hope that it is.  And I hope that

11   given the treatment -- you're a young guy, and when you get

12   out, you're going to be a young guy.  And you're going to have

13   a lot of years ahead of you to be productive and to be a

14   productive member of society.  And I sincerely hope, I know we

15   all sincerely hope, that that's what happens here.

16           So, I wish you all the luck in the world.  And I ask

17   you to participate wholeheartedly in the treatment that you're

18   going to get both in prison and after you're released from

19   prison.  Okay?

20           Thanks very much, everyone.  Appreciate it.

21           MS. LAMARQUE:  Thank you, Your Honor.

22           MR. SEIBERT:  Thanks, Judge.

23           (Proceedings concluded at 12:22 p.m.)

24           *     *     *     *     *     *     *

25

1                    CERTIFICATION

2

3          I certify that the foregoing is a

4    correct transcription of the proceedings

5    recorded by me in this matter.

6

7

8

9                    s/ Ann M. Sawyer
                     Ann M. Sawyer, FCRR, RPR, CRR,
10                   NYRCR, NYACR, Notary Public
                     Official Reporter
11                   U.S.D.C., W.D.N.Y.

12

13

14

15

16

17

18

19

20

21

22

23

24

25